**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, a minor, by and through Guardian ad Litem, LATASHA POPE, individually and on behalf of all others similarly situated and the general public,<br><br>    Plaintiff,<br><br>    v.<br><br>RADY CHILDREN'S HOSPITAL-SAN DIEGO, a California Corporation, and RADY CHILDREN'S HOSPITAL FOUNDATION – SAN DIEGO<br><br>    Defendants. | Case No.: 3:21-cv-00114-WQH-AHG<br><br>CLASS ACTION<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**1.** Negligence Per Se<br>**2.** California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq.*<br>**3.** California Consumer Records Act<br>**4.** Invasion of Privacy<br>**5.** Breach of Implied Contract<br>**6.** Breach of Contract<br>**7.** Breach of Covenant of Good Faith and Fair Dealings<br>**8.** California's Unfair Competition Law<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

First Amended Class Action Complaint

Plaintiff John Doe ("Plaintiff"), a minor, by and through Guardian ad Litem, Latasha Pope, individually and on behalf of all others similarly situated and the general public, by and through undersigned counsel, hereby brings this First Amended Class Action against Rady Children's Hospital - San Diego ("Rady's Hospital") and Rady Children's Hospital Foundation - San Diego ("Rady's Foundation") (together "Defendants") to, without limitation, obtain actual and exemplary damages, injunctive relief, restitution, and obtain a declaration that Defendants' actions were unlawful as further set forth below.  Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and on information and belief as to all other matters, including, *inter alia*, any investigation conducted by and through his attorneys.

## NATURE OF THE ACTION

1.     Defendant Rady's Hospital is a regionally based hospital dedicated exclusively to pediatric health care.  It is the largest children's hospital in California (based on admissions).

2.     Defendant Rady's Foundation is the philanthropic resource for Rady's Hospital.

3.     On or after October 28, 2020, Defendants announced a data breach involving the private medical information of approximately 19,788 of its patients (the "Data Breach").  The Data Breach occurred between February 7, 2020 and June 4, 2020.  The unencrypted medical information included highly valuable and protected data including patient names, addresses, dates of birth, the names of patients' physicians, and the department the patients were admitted to ("Private Health Information").

4.     Defendants blame the latest data breach on its third-party vendor, Blackbaud, Inc ("Blackbaud").  However, the only reason Blackbaud was in possession of patients' medical information was because Defendants improperly disclosed its patients' Private Health Information without prior authorization and in

- 2 -

First Amended Class Action Complaint

1  violation of its patients' rights under the California's Confidentiality of Medical
2  Information Act ("CMIA"), Cal. Civ. Code §§ 56 *et seq* .

3      5.    Defendants allegedly determined that its patients' Private Health
4  Information was involved in the Data Breach on October 7, 2020, despite the fact that
5  Blackbaud announced that it had been the victim of a ransomware attack and data
6  breach, exposing the private information and even private health information of its
7  clients' students, patients, and donors in May of 2020.

8      6.    Upon information and belief, once Blackbaud was aware of the
9  cybercriminals, the Blackbaud's IT experts expelled the hackers from the system, but
10 only after the hackers were able to remove a copy of a subset of Blackbaud's
11 unencrypted data.    Realizing the value of the unencrypted data that they had stolen,
12 the hackers then demanded a ransom from Blackbaud upon threat of releasing the
13 data.

14     7.    Plaintiff John Doe, through his Guardian ad Litem, Latasha Pope learned
15 that his Private Health Information was involved in the Data Breach after Ms. Pope
16 received a notification letter from Defendants.

17     8.    Plaintiff and the other Class Members' Private Health Information is
18 now at risk because of Defendants' negligent conduct and unfair acts and practices in
19 disclosing patients' Private Health Information to Blackbaud, and anyone else,
20 without authorization.  The Private Health Information that Defendants collected and
21 maintained has been placed in the hands of criminal hackers.  Defendants cannot
22 reasonably maintain that the hackers destroyed the Private Health Information.

23     9.    Under the CMIA, Defendants are subject to the requirements for
24 preserving the confidentiality of medical information set forth under the act.

25     10.   Defendants have a duty to reasonably protect the confidentiality of the
26 medical information that it maintains, preserves, stores, abandons, destroys, or
27 disposes of, and failure to comply with this duty exposes Defendants to liability for
28 nominal and/or actual damages under Cal. Civ. Code § 56.36.

First Amended Class Action Complaint

11.     Specifically, Rady's Hospital failed to uphold its duty under CMIA when it disclosed its patients' medical information, including Private Health Information to Rady's Foundation who then further improperly disclosed those patients' Private Health Information to Blackbaud.   Furthermore, Rady's Foundation failed to uphold its duty under CMIA when it disclosed Private Health Information directly to Blackbaud.

12.     As a direct and proximate result of Defendants' wrongful disclosures, Private Health Information of its patients and members was obtained by the unauthorized hackers when Blackbaud's (an unauthorized party to the information itself) computer system was breached.

13.     Accordingly, Plaintiff brings this class action individually and on behalf of all others similarly situated and the general public and asserts the following causes of action: negligence per se, violations of the CMIA, violation of the California Consumer Records Act**,** invasion of privacy, breach of implied contract, breach of contract and breach of covenant of good fair and fair dealings, violations of California's Unfair Competition Law against Defendants.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the Classes, as defined below is a citizen of a different state than Defendants, there are more than 100 members of the Classes, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

15.     The Court has personal jurisdiction over Defendants because Defendants' negligent acts or omissions and violations of consumer protection statutes regarding the security of Plaintiff's and Class Members' Private Health Information alleged herein caused injury to Plaintiff who is located in the Southern District of California.

First Amended Class Action Complaint

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District.

## PARTIES

17.    Plaintiff John Doe, a minor by and through Guardian Ad Litem, Latasha Pope, is a resident of San Diego County, California.

18.    Defendant Rady Children's Hospital - San Diego is a California non-profit corporation registered under entity number C0250564.   Rady's Hospital principal place of business is located at 3020 Children's Way, San Diego, California 92123.

19.    Defendant Rady Children's Foundation – San Diego is a California non-profit corporation registered under entity number C1294072.   Rady's Foundation principal place of business is also located at 3020 Children's Way, San Diego, California 92123.

## FACTUAL ALLEGATIONS

### Defendants' Obligations under the CMIA and Applicable Federal Law

20.    Defendants are considered providers of health care as defined under CMIA.  Cal. Civ. Code § 56.05(m).

21.    As providers of health care, Defendants must not disclose medical information without first obtaining an authorization. Cal. Civ. Code § 56.10.

22.    Further, every provider of health care who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information has a duty to preserve the confidentiality of the information contained therein.  Cal. Civ. Code § 56.101(a).

23.    "Any provider of health care . . . who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36."  Cal. Civ. Code § 56.101(a).

24.    Defendants create, maintain, preserve, store, abandon, destroy, or dispose medical information.

First Amended Class Action Complaint

25.    Defendants are thus required by the CMIA to take appropriate preventative actions to protect the private medical information against release consistent with Defendants' obligations under Civil Code § 56.36(e)(2)(E) and the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) (HIPAA) and all HIPAA Administrative Simplification Regulations in effect on January 1, 2012, contained in Parts 160, 162, and 164 of Title 45 of the Code of Federal Regulations, and Part 2 of Title 42 of the Code of Federal Regulations, including, but not limited to, all of the following:

i.    Developing and implementing security policies and procedures.

ii.   Designating a security official who is responsible for developing and implementing its security policies and procedures, including educating and training the workforce.

iii.  Encrypting the information or records and protecting against the release or use of the encryption key and passwords, or transmitting the information or records in a manner designed to provide equal or greater protections against improper disclosures.

**The Data Breach**

26.    On October 29, 2020, Rady's Hospital issued a press release on its website stating that it "recently learned that one of its third-party service providers, Blackbaud," had experienced a data breach involving "information about members of the Rady Children's Hospital-San Diego community" (hereinafter referred to as the "Data Breach"). *See* **Exhibit 1.**

27.    The press release went on to state that between February 7, 2020 and June 4, 2020, "an unauthorized party had access to backup files for the Blackbaud fundraising software." *See id.*

28.    "Blackbaud is a company that supplies fundraising and donor management software to Rady Children's." *See id.*

- 6 -

First Amended Class Action Complaint

29.     Rady's Hospital claimed it determined the Private Health Information for members of its community was contained in the backup files on October 7, 2020. The Private Health Information involved names, addresses, physician, date of admission, department of service, and date of birth.  *See id.*

30.     On October 29, 2020, Rady's Hospital reported the Data Breach to the California State Attorney General.  Rady's Hospital additionally submitted a breach notification sample of a letter entitled "Notice of Data Security Incident" wherein it outlines the information set forth in its press release in addition to offering complimentary identity monitoring services for an unspecified amount of time.  *See* **Exhibit 2.**

31.     The breach notification letter uses the hospital's logo (Rady's Hospital) as well as the foundation's logo (Rady's Foundation).  *See id.*

32.     This breach notification letter also specifies that the Data Breach not only involved Rady's Hospital, but "members of the community who provided information to Rady Children's Hospital – San Diego or the Rady's Children's Hospital Foundation – San Diego.  *See id.*

33.     Both the press release and breach notification letter conveniently skip over the underlying question: How did Blackbaud obtain patients' Private Health Information in the first place?

34.     Upon information and belief, Rady's Hospital either disclosed its patients' Private Health Information directly to Blackbaud without prior authorization and in violation of CMIA and/or Rady's Hospital disclosed its patient's Private Health Information to Rady's Foundation who then disclosed the information to Blackbaud.  In all instances the transfers of Private Health Information were without prior authorization and in violation of CMIA.

35.     The Private Health Information Rady's Hospital disclosed to Rady's Foundation as well as the Private Health Information both Defendants disclosed to

First Amended Class Action Complaint

Blackbaud is protected medical information as defined under Cal. Civ. Code § 56.05(j).

36.     Pursuant to Cal. Civ. Code § 56.10(a):

A provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan <u>without first obtaining an authorization</u>, except as provided in subdivision (b) or (c). (emphasis added).

37.     Subdivision (b) of Cal. Civ. Code § 56.10 provides an exhaustive list of circumstances under which the Defendants must disclose medical information without prior authorization.

38.     Subdivision (c) of Cal. Civ. Code § 56.10 provides an exhaustive list of circumstances under which the Defendants may disclose medical information without prior authorization.

39.     Neither Cal. Civ. Code §56.10 (b) or (c) include disclosing medical information in connection with fundraising activities as an exception to the prior authorization rule set forth under subdivision (a).

40.     Accordingly, Rady's Hospital was required to obtain prior written authorization from its patients before disclosing any of their medical information to Rady's Foundation and likewise both Defendants were required to obtained prior written authorization before disclosing any Private Health Information to Blackbaud.

41.     Cal. Civ. Code 56.10(d) reinforces this restriction by stating that unless "expressly authorized by a patient, enrollee, or subscriber, or as provided by subdivisions (b) and (c), a provider of health care . . . shall not intentionally share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide health care services to the patient."

42.     The CMIA defines "authorization" as obtaining permission in accordance with Cal. Civ. Code §§ 56.11 or 56.21. The latter section deals with

obtaining authorization for an employer to disclose medical information.  *See* Cal. Civ. Code § 56.21.

43.    Cal. Civ. Code 56.11 states:

Any person or entity that wishes to obtain medical information pursuant to subdivision (a) of Section 56.10, other than a person or entity authorized to receive medical information pursuant to subdivision (b) or (c) of Section 56.10, except as provided in paragraph (21) of subdivision (c) of Section 56.10, shall obtain a valid authorization for the release of this information.

44.    Cal. Civ. Code 56.11 states an authorization is valid if it:

(a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.
(b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.
(c) Is signed and dated by one of the following:
        (1) The patient. A patient who is a minor may only sign an authorization for the release of medical information obtained by a provider of health care, health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which the minor could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).
        (2) The legal representative of the patient, if the patient is a minor or an incompetent. However, authorization may not be given under this subdivision for the disclosure of medical information obtained by the provider of health care, health care service plan, pharmaceutical company, or contractor in the course of furnishing services to which a minor patient could lawfully have consented under Part 1 (commencing with Section 25) or Part 2.7 (commencing with Section 60).

First Amended Class Action Complaint

(3) The spouse of the patient or the person financially responsible for the patient, where the medical information is being sought for the sole purpose of processing an application for health insurance or for enrollment in a nonprofit hospital plan, a health care service plan, or an employee benefit plan, and where the patient is to be an enrolled spouse or dependent under the policy or plan.

(4) The beneficiary or personal representative of a deceased patient.

(d) States the specific uses and limitations on the types of medical information to be disclosed.

(e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

(f) States the name or functions of the persons or entities authorized to receive the medical information.

(g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

(h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

(i) Advises the person signing the authorization of the right to receive a copy of the authorization.

45.   Upon information and belief, Rady's Hospital did not obtain valid authorization as defined under the CMIA, Cal. Civ. Code § 56.11 prior to disclosing its patients' medical information to Rady's Foundation and neither Defendants obtained valid authorizations as defined under the CMIA, Cal. Civ. Code § 56.11 prior to disclosing Blackbaud.

- 10 -

First Amended Class Action Complaint

46.     The only reference to fundraising activities is buried in Rady's Hospital Notice of Privacy Policies.[1] *See* **Exhibit 3** (note that "We" does not include Rady's Foundation).

47.     The notice states:

**Fundraising** - We may use and share certain information about you to contact you about our fundraising activities. Information that we may use include your name, address, age, gender, date of birth, telephone number and other contact information (such as email address), dates when you received care at Rady Children's, the name of your treating physician, your general department of service, and health insurance status to contact you to raise money for our health care organizations and their activities and to improve the services and programs we provide to the community. You may receive calls, letters or other communications from Rady Children's Hospital Foundation, asking you to consider making a donation. We rely on fundraising to support advances in pediatric care, research and education, and to provide special services to our patients and the community. Any fundraising communications you receive from Rady Children's will include information about how you can opt out of these communications. Your decision to opt out will have no impact on your treatment or payment for services. *See id.*

48.     This notice is not a valid authorization under the CMIA for Rady's Hospital to disclose Private Health Information to Rady's Foundation nor is it a valid authorization for either Defendant to disclose Private Health Information to Blackbaud.

49.     In addition to the lack of a written authorization by the patient, legal representative, legal guardian, or parent (remember Rady's Hospital is a pediatric hospital) for the patient's Private Health Information to be disclosed, the Fundraising

---

[1] On information and belief, Rady's Hospital's patient are not actually presented with the contents of the Privacy Policy, and instead only shown an electronic sign page "Acknowledgment of Receipt of Joint Notice of Privacy Practices."

section in Rady's Hospital Notice of Privacy Policy does not comply with Cal. Civ. Code § 56.11's requirements.  Specifically, the Fundraising section:

- is not separate from other language present on the same page and does not have a signature line that serves no other purpose than to execute the authorization;
- does not state the specific uses and limitations on the types of medical information to be disclosed;
- does not state the name or functions of the entity authorized to receive the medical information (in fact there is no mention of Blackbaud anywhere in the Notice of Privacy Policy);
- does not state the specific uses and limitations on the use of medical information by the entity (i.e., Rady's Foundation and/or Blackbaud) authorized to receive the medical information;
- does not state the specific date after which Rady's Hospital is no longer authorized to disclose the medical information; and
- does not advise the person signing the authorization of the right to receive a copy of the authorization.

50.   As a result of Rady's Hospital wrongful disclosure of Private Health Information to Rady's Foundation and both Defendants' wrongful disclosure of Private Health Information to Blackbaud, Plaintiff and Class Members' Private Health Information was hacked and thereafter viewed by the unauthorized hackers.

51.   The Private Health Information improperly disclosed to both Rady's Foundation and Blackbaud and thereafter involved in the Data Breach is protected medical information as defined under Cal. Civ. Code § 56.05(j).

52.   Defendants state that "Blackbaud has represented that they are monitoring the dark web for any exchange of personal information related to this incident." *See* **Exhibit 1** and **Exhibit 2**.

- 12 -

First Amended Class Action Complaint

53.     However, the press release and sample notice letter fail to mention that the attack on Blackbaud's security system involved the donor information from hundreds of nonprofits and institutions.  *See* Doug Kreitzberg, *Blackbaud Breach Leaves Hundreds of Non-Profits Scramblin*g, Designed Privacy, July 31, 2020, https://designedprivacy.com/blackbaud-breach/#:~:text=The%20Blackbaud%20breach%20is%20just%20the%20latest%20reminder,hackers%20stole%20a%20copy%20of%20a%20data%20set  (last visited March 26, 2021).

54.     On information and belief, Blackbaud has not provided verification or further details regarding the disposition of the data to confirm that the stolen data has been destroyed.  Nor do Defendants or Blackbaud know whether the hackers maintained the data in a sufficiently secure manner to prevent others from acquiring the Private Health Information.  Importantly, the Private Health Information was not even encrypted while disclosed, stored and/or viewed by Blackbaud.

55.     On information and belief, Plaintiff's and the other Class Members' Private Health Information was copied multiple times by unauthorized users, not destroyed, and the data has been or may be sold and misused at a later date.

56.     On October 30, 2020, Rady's Hospital also reported the breach to the Secretary of the U.S. Department of Health and Human Services Office for Civil Rights.  Rady's Hospital reported that the breach affected approximately 19,788 individuals.  *See* ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited March 26, 2021).

57.     In reporting the Data Breach to the Secretary of the U.S. Department of Health and Human Services Office for Civil Rights, Rady's Hospital effectively admits that the medical information involved in the Data Breach was unsecured protected health information as defined by 45 C.F.R. § 164.402.  *See* 45 C.F.R. § 164.408.

- 13 -

1    58.    Unsecured protected health information is defined as "protected health
2    information that is not rendered unusable, unreadable, or indecipherable to
3    unauthorized persons through the use of a technology or methodology specified by
4    the Secretary." 45 C.F.R. § 164.402.

5    59.    This is not the first time Rady's Hospital has failed to reasonably protect
6    and preserve the confidentiality of medical information of its patients.   Rady's
7    Hospital was previously investigated by the California Department of Public Health
8    for a four separate reported disclosures of unencrypted patient data of 20,421 of its
9    patients between June 16, 2014 and July 25, 2015.  Following an investigation of the
10   incident, the California Department of Public Health found Rady's Hospital "failed to
11   prevent unlawful or unauthorized access to, or use or disclosure of, patients' medical
12   information in violation of Health and Safety Code Section 1280.15, subdivision (a)."
13   Rady Children's Hospital – San Diego Statement of Deficiencies and Plan of
14   Correction,              December              1,              2015
15   https://www.cdph.ca.gov/Programs/CHCQ/LCP/CDPH%20Document%20Library/Br
16   eaches/RadyChildrensHospitalAPBreach_080011817.pdf (last visited March 26,
17   2021).

18   60.    As a result, the California Department of Public Health fined Rady's
19   Hospital penalties of up to $25,000 per patient whose medical information was
20   disclosed.  *See* Penalties Issued in 2016, California Department of Public Health,
21   https://www.cdph.ca.gov/Programs/CHCQ/LCP/Pages/MedicalBreaches.aspx   (last
22   visited March 26, 2021) (lists Rady Children's Hospital - San Diego); *see also* Rady
23   Children's Hospital – San Diego Statement of Deficiencies and Plan of Correction,
24   December              1,              2015
25   https://www.cdph.ca.gov/Programs/CHCQ/LCP/CDPH%20Document%20Library/Br
26   eaches/RadyChildrensHospitalAPBreach_080011817.pdf ("The department, after
27   investigation, may assess an administrative penalty for a violation of [Health &
28   Safety Code § 1280.15(a)] may assess an administrative penalty of up to twenty-five

1  thousand dollars ($25,000) per patient whose medical information was unlawfully or
2  without authorization accessed, used, or disclosed.")

3      61.   As recently as February 21, 2020, another data breach involving the
4  Rady's Hospital was reported to the California Attorney General.  Rady's Hospital
5  reported a data security incident involving the radiology-related information of 2,360
6  patients occurred between the dates of June 20, 2019 and January 5, 2020.  A class
7  action was filed on July 1, 2020 by Jose Orozco under case no. 37-2020-00023102-
8  CU-NP-CTL in San Diego Superior Court. *Orozco v. Rady Children's Hospital-San*
9  *Diego*, No. 37-2020-00023102-CU-NP-CTL, Register of Actions 1, Plaintiff's Class
10 Action Complaint, San Diego Superior Court.

11     62.   This latest data breach involving approximately 19,788 individuals'
12 Private Medical Information is further evidence that Rady's Hospital conduct and
13 practices as it relates to the preservation the confidentiality of its patients' medical
14 information fails to reasonably protect said information from unauthorized disclosure
15 in violation of Cal. Civ. Code 56.101(a).

16     63.   Defendants have the resources necessary to protect and preserve the
17 confidentiality of electronic medical information of Plaintiff and the Classes in its
18 possession (and the ability to obtain valid authorizations) but neglected to safeguard
19 Plaintiff and the Classes' medical information when it improperly disclosed their
20 Private Health Information both to Rady's Foundation then to Blackbaud for
21 fundraising purposes without prior authorization from its patients.  Additionally, the
22 risk of vulnerabilities in the computer and data systems of being exploited by an
23 unauthorized third party trying to steal Plaintiff's and the Classes' medical
24 information was foreseeable and/or known to Defendants.

25          **Rady's Hospital Expressly Promised to Protect Its Patients' Medical**
26                                      **Information**

27     64.   Rady's Hospital privacy policy states it is "committed to protecting the
28 privacy of medical information" and that it has "a duty and responsibility to

First Amended Class Action Complaint

1    safeguard patient medical information." *See* **Exhibit 3** at pg. 4, PURPOSE OF THIS
2    NOTICE.

3        65.    Notwithstanding the foregoing promises, Rady's Hospital failed to
4    protect the medical information of its patients when it wrongfully disclosed their
5    information to both Rady's Foundation and Blackbaud for fundraising – which was
6    not for the purpose of diagnosis or treatment of the patient - without prior
7    authorization.

8        66.    If Defendants truly understood the importance of safeguarding its
9    patients' medical information, it would acknowledge its responsibility for the harm
10   they have caused, and would compensate them.

11       67.    Defendants' obligation to safeguard and not improperly disclose Private
12   Health Information is particularly important given the known substantial increase in
13   data breaches in the healthcare industry, including the recent data breaches involving
14   the Defendant itself.  Thus, Defendants' lack of transparently in disclosing Private
15   Health Information to Blackbaud for purposes other than diagnosis or treatment was
16   reckless and caused sever damages to patients whose Private Health Information is
17   not at risk.

18                     **Facts Specific to Plaintiff**

19       68.    Plaintiff, like each member of the proposed Classes, was admitted as a
20   patient for treatment and services.

21       69.    Plaintiff, like each member of the proposed Classes, provided Rady's
22   Hospital with individually identifiable medical information as defined under Cal. Civ.
23   Code § 56.05(j) when they received medical services from Rady's Hospital.

24       70.    Plaintiff, like each member of the proposed Classes, expected Rady's
25   Hospital to maintain the privacy of their medical information as set forth under its
26   privacy practices and state and federal law.

27       71.    Defendants sent Latasha Pope, guardian of Plaintiff, a minor under the
28   age of 14, a letter entitled "Notice of Data Security Incident" and signed by Christina

- 16 -

Galbo, MBA, CHC, Chief Compliance and Privacy Officer, admitting and confirming that his personal medical information in Defendants' possession had been stolen.

72. Apart from offering one (1) year of complimentary identity monitoring services, Defendants do nothing to mitigate the harms caused by the Data Breach.

73. Defendants' offer of identity monitoring services is woefully inadequate. When it comes to identity theft, there is often time a lag between when harm occurs versus when it is discovered, and also between when medical information is acquired and when it is used. Furthermore, identity monitoring services only alert someone to the fact that they have already been the victim of identity theft, they do *not* prevent identity theft. *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html (last visited March 26, 2021). Additionally, as patients of Rady's Hospital are minors, the one (1) year credit monitoring does little to protect.

74. As a direct and proximate result of Defendants' improper disclosure of Private Health Information (Rady's Hospital improper disclosure to Rady's Foundation and/or Blackbaud and Rady's Foundation improper disclosure to Blackbaud) and the Data Breach which thereafter occurred, Plaintiff and Class Members have been placed at an imminent, immediate, substantial and continuing increased risk of harm from fraud and identity theft. Plaintiff and Class Members must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

75. This risk is made even more concerning by the fact that members of the Classes, including the Plaintiff, are minors and thus stand to lose more than what is at

1   usually at stake with identity theft given their lack of credit history and the fact that
2   their information can be used to create a "clean slate identity."

3       76.   Child identity theft has become more prevalent over the years in large
4   part because the crime is more difficult to detect.  "When an unauthorized person
5   uses your credit card number to make unauthorized purchases, most banks will
6   contact you the moment they suspect suspicious activity.  But when an unauthorized
7   person uses your child's name successfully to get a credit card—either by using a pre-
8   approved card offer stolen from a mailbox or by creating a synthetic identity and
9   applying for a new card—it is highly unlikely that anyone will contact you.  As far as
10  the bank or credit bureau is concerned, the false identity is real because thieves use a
11  child's clean slate to establish a new credit history." *See* Brett Singer, *What Is Child*
12  *Identity Theft?*, Apr. 13, 2014, https://www.parents.com/kids/safety/tips/what-is-
13  child-identity-theft/ (last visited March 26, 2021).

14      77.   Identity theft "can wreak havoc on [] children's credit and even leave
15  them with a massive debt before they've even reached voting age."  In 2017, alone,
16  more than one million children were the victims of identity fraud.  *See* Casey Bond,
17  *How   to   Check   Your   Child's   Credit   Report*, Feb. 5, 2019,
18  https://creditcards.usnews.com/articles/how-to-check-your-childs-credit-
19  report#:~:text=%20Protecting%20Your%20Child%27s%20Credit%20%201%20Kee
20  p,that%20contain%20your%20child%27s%20sensitive%20personal...%20More%20
21  (last visited January 20, 2021).

22      78.   Plaintiff and the Class Members have suffered, continue to suffer and/or
23  will suffer, actual harms for which they are entitled to compensation, including:

24      a.   Trespass, damage to, and theft of their personal medical information;

25      b.   Improper disclosure of their medical information;

26      c.   The imminent and certainly impending injury flowing from potential
27  fraud and identity theft posed by their medical information being placed in the hands
28  of criminals;

- 18 -

First Amended Class Action Complaint

d.      The imminent and certainly impending risk of having their medical information used against them by spam callers to defraud them;

e.      Loss of privacy suffered as a result of the Data Breach;

f.      Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

g.      Ascertainable losses in the form of deprivation of the value of Plaintiff's and Class Members' personal identifiable information within their medical information, for which there is a well-established and quantifiable national and international market;

h.      Damage to their credit due to fraudulent use of their medical information;

i.      Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

79.     Moreover, Plaintiff and Class Members have an interest in ensuring that their medical information, which remains in the possession of Defendants, is protected from further unlawful disclosures such that patients of Rady's Hospital are not left in the dark regarding who is in possession of their Private Health Information and whether those entities are properly protecting that Private Health Information.

80.     Defendants themselves acknowledged the harm caused by the Data Breach by offering Plaintiff and Class Members identity theft monitoring services. However, the identity theft monitoring is woefully inadequate to protect Plaintiff and Class Members from a lifetime of identity theft risk and does nothing to reimburse Plaintiff and Class Members for the injuries they have already suffered, or offer any such reassurances that such actions will not occur in the future.

First Amended Class Action Complaint

1

## CLASS ACTION ALLEGATIONS

2   81.   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure

3   23(b)(2) and 23(b)(3) on behalf of himself and a nationwide Classes and California

4   Sub-Classes defined as follows:

5

6   **National Class Against Rady's Hospital:**  All persons in the United
    States whose Private Health Information was disclosed to Rady's

7   Foundation by Rady's Hospital from four years prior to the filing of
    Plaintiff's Complaint.

8

9   **California Sub-Class Against Rady's Hospital:**   All persons in
    California whose Private Health Information was disclosed to Rady's

10  Foundation by Rady's Hospital from four years prior to the filing of
    Plaintiff's Complaint.

11

12

13  **National Data Breach Class Against Defendants**:  All persons in the
    United States whose Private Health Information was disclosed by Rady's

14  Hospital directly to Blackbaud or to Blackbaud by a disclosure first from
    Rady's Hospital to Rady's Foundation, and was thereafter compromised

15  as a result of the Data Breach announced by Defendants on or around

16  October 28, 2020.

17

18  **California Data Breach Sub-Class Against Defendants**:  All persons
    in California whose Private Health Information was disclosed by Rady's

19  Hospital directly to Blackbaud or to Blackbaud by a disclosure first from
    Rady's Hospital to Rady's Foundation, and was thereafter compromised

20  as a result of the Data Breach announced by Defendants on or around

21  October 28, 2020.

22

23  82.   The following people are excluded from the Classes: (1) any judge or

24  magistrate presiding over this action and members of their families; (2) Defendants,

    Defendants' subsidiaries, parents, successors, predecessors, affiliated entities, and

25  any entity in which the Defendants or its parent has a controlling interest, and their

26  current or former officers and directors; (3) persons who properly execute and file a

27  timely request for exclusion from the Classes; (4) persons whose claims in this matter

28  have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

- 20 -

1    counsel and Defendants' counsel; and (6) the legal representatives, successors, and

2    assigns of such excluded persons.

3        83.    <u>Numerosity</u>.   The members in the proposed Data Breach Classes are

4    approximately 19,788 individuals.  The members of the Rady's Hospital Classes are

5    believed to be significantly more.  Accordingly, individual joinder of all members is

6    impracticable, and the disposition of the claims of all Class Members in a single

7    action will provide substantial benefits to the parties and Court.

8        84.    <u>Commonality</u>.   Questions of law and fact common to Plaintiff and the

9    Class include:

10       a.   Whether Defendants violated the laws asserted herein, including without

11            limitation the California Confidentiality of Medical Information Act,

12            Cal. Civ. Code §§ 56 *et seq* and the Consumer Privacy Act, Cal. Civ.

13            Code §§ 1798.100 *et seq.*

14       b.   Whether Defendants had a duty to use reasonable care to safeguard

15            Plaintiff and the Class Members' medical information.

16       c.   Whether Defendants maintained proper authorizations for disclosures of

17            private health information;

18       d.   Whether Defendants breached its contractual promises to safeguard

19            Plaintiff and the Class Members' medical information.

20       e.   Whether Defendants knew or should have known about the inadequacies

21            of their data security polices and system and the dangers associated with

22            storing sensitive medical information.

23       f.   Whether Defendants failed to use reasonable care and commercially

24            reasonable methods to safeguard and protect Plaintiff's and the other

25            Class Members' medical information from unauthorized release and

26            disclosure.

27       g.   Whether Defendants' conduct was deceptive, unfair, unconscionable, or

28            constituted unfair competition.

First Amended Class Action Complaint

h.  Whether Defendants' conduct was likely to deceive a reasonable consumer.

i.  Whether Defendants are liable for negligence per se.

j.  Whether Plaintiff and the Classes are entitled to nominal damages, actual damages.

k.  Whether Defendants' conduct violated applicable state laws.

l.  Whether Plaintiff and Classes were injured as a proximate cause or result of the improper disclosures and the Data Breach.

m.  Whether Defendants' practices and representations related to the Data Breach breached implied warranties.

n.  Whether Defendants have been unjustly enriched as a result of the conduct complained of herein.

o.  Whether Plaintiff and the Classes are entitled to damages, restitutionary, injunctive, declaratory, or other relief.

85.  <u>Typicality.</u>  Plaintiff is a member of the Classes.  Plaintiff's claims are typical of the claims of each Class member in that Plaintiff and Class Members sustained damages arising out of Defendants' unauthorized disclosure of Plaintiff and Class Members' medical information, and Plaintiff and Class Members sustained similar injuries and damages as a result of Defendants uniform illegal conduct.

86.  <u>Adequacy.</u>  Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of the Classes he seeks to represent.  Plaintiff's claims are common to all members of the Classes, and Plaintiff has a strong interest in vindicating the rights of absent Class Members.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and they intend to vigorously prosecute this action.

87.  <u>Ascertainability.</u>  Class Members can easily be identified by the objective criteria set forth in the Class definitions.

- 22 -

First Amended Class Action Complaint

88. <u>Predominance.</u>   The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes.  Class issues fully predominate over any individual issue.

89. <u>Superiority.</u>  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the joinder of all individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources; (b) the individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions; (c) when Defendants liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

90. This class action is properly brought and should be maintained as a class action because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

91. This class action is also properly brought and should be maintained as a class action because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the Classes.  Certification is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Classes (i.e., Defendants have failed to reasonably protect Plaintiff and the Class Members' medical information).   Thus, any final injunctive relief or declaratory relief would benefit the Class as a whole.

First Amended Class Action Complaint

## Causes of Action

## COUNT ONE

## Negligence Per Se

92.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.   Plaintiff brings this claim individually and on behalf of all Classes, or in the alternative, the California Sub-Classes.

94.   The CMIA prohibits health care providers, like the Defendants, from disclosing patients' medical information unless the health care provider obtains prior valid authorization as defined under Cal. Civ. Code § 56.11 or such disclosure falls under the limited exceptions set forth under Cal. Civ. Code § 56.10(b) or (c).

95.   Defendants violated Cal. Civ. Code § 56.10(a) when Rady's Hospital disclosed Plaintiff's and Class Members' Private Health Information (including medical information) to both Rady's Foundation and Blackbaud without prior valid authorization and when Rady's Foundation disclosed Plaintiff's and Class Members' Private Health Information (including medical information) to Blackbaud.   Such disclosures do not fall into the exceptions set forth under Cal. Civ. Code § 56.10(b) or (c).

96.   Defendants' violation of Cal. Civ. Code § 56.10(a) actually and proximately caused Plaintiff and Class Members actual, tangible injury-in-fact, and damages, including without limitation the improper disclosure of their confidential medical information and lost time and money incurred to investigate, mitigate, and remediate the effects of the Data Breach that resulted and was caused by Defendants violation of § 56.10(a), which injury-in-fact and damages are ongoing, imminent, immediate, and which Plaintiff and Class Members continue to face.

97.   Defendants' violation of Cal. Civ. Code § 56.10 is a substantial factor in bringing about the harms suffered by Plaintiff and Class Members.

98.   The harms suffered by Plaintiff and Class Members as a result of Defendants violation of Cal. Civ. Code § 56.10(a) are the types of harms that the statute was designed to prevent.

99.   Cal. Civ. Code § 56.10(a) is designed to protect individuals' medical information from unauthorized disclosure.  Plaintiff and Class Members are therefore part of the class of persons that Cal. Civ. Code § 56.10(a) was designed to protect.

100.   Accordingly, Plaintiff and Class Members seek damages in accordance with applicable law.

## COUNT TWO

## Violations of the CMIA

101.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

102.   Plaintiff brings this claim individually and on behalf of all Classes, or in the alternative, the California Sub-Classes.

103.   Defendants are a "provider of health care" as defined under Cal. Civ. Code § 56.05(m).

104.   Defendants create, maintain, preserve, and store Plaintiff's and Class Members' "medical information" as defined under Cal. Civ. Code 56.05(j).

105.   Plaintiff and Class Members are "Patients" as defined by Cal. Civ. Code § 56.05(k).

106.   As a provider of health care, Defendants owe a duty to preserve the confidentiality of Plaintiff's and the Classes' medical information and to not allow Plaintiff's and the Classes' medical information to be released and viewed by unauthorized persons.  Defendants breached its duty owed to Plaintiff and the Class by disclosing their medical information without a valid prior authorization – both in Rady's Hospital disclosure to Rady's Foundation and Blackbaud and Rady's Foundation disclosure to Blackbaud.

First Amended Class Action Complaint

1      107. In violation of Cal. Civ. Code § 56.10(a), Defendants disclosed
2  Plaintiff's and the Class Members' Private Health Information (including medical
3  information) in connection with fundraising activities without first obtaining an
4  authorization.  This release of Plaintiff's and Class Members' Private Health
5  Information to both Rady's Foundation and Blackbaud was an affirmative act in
6  violation of Cal. Civ. Code § 56.10(a).  As a direct and proximate result of
7  Defendants' violation of Cal. Civ. Code § 56.10(a), Plaintiff's and Class Members'
8  Private Health Information was viewed not only by Rady's Foundation and
9  Blackbaud but (in the case of the Data Breach Classes) was also further viewed by
10 the unauthorized hackers who stole Plaintiff's and Class Members' Private
11 Information from Blackbaud.

12     108. In violation of the first sentence of Cal. Civ. Code § 65.101(a),
13 Defendants created, maintained, preserved, stored, abandoned, destroyed, or disposed
14 of medical information (including Plaintiff's and the Class Members' Private
15 Information) in a manner that failed to preserve and breached the confidentiality of
16 the information contained therein.  This violation resulted from the affirmative
17 actions of Defendants who disclosed Plaintiff's and Class Members' Private Health
18 Information to Rady's Foundation and Blackbaud in connection with fundraising
19 activities.  Plaintiff's and the Class Members' Private Health Information was viewed
20 not only by Rady's Foundation and Blackbaud but (in the case of the Data Breach
21 Classes) also by the unauthorized hackers as a direct and proximate result of
22 Defendant's violation of Cal. Civ. Code § 56.10(a).

23     109. In violation of the second sentence of Cal. Civ. Code § 56.101(a),
24 Defendants negligently created, maintained, preserved, stored, abandoned, destroyed,
25 or disposed of Plaintiff's and the Class Members' medical information.  Plaintiff's
26 and the Class Members' Private Health Information was viewed not only by Rady's
27 Foundation and Blackbaud but (in the case of the Data Breach Classes) also by the
28

- 26 -

First Amended Class Action Complaint

1  unauthorized hackers as a direct and proximate result of Defendants' violation of Cal.
2  Civ. Code § 56.10(a).

3      110.  In violation of Cal. Civ. Code § 56.36(b) Defendants negligently
4  released confidential information or records concerning Plaintiff's and Class
5  Members' (including Plaintiff's and Class Member's Private Health Information).
6  This negligent release of Plaintiff's and Class Members' Private Health Information
7  to Rady's Foundation and Blackbaud was an affirmative communicative act in
8  violation of Cal. Civ. Code § 56.36(b).  Plaintiff's and the Class Members' Private
9  Health Information was viewed not only by Rady's Foundation and Blackbaud but (in
10 the case of the Data Breach Classes) also by the unauthorized hackers as a direct and
11 proximate result of Defendants' violation of Cal. Civ. Code § 56.10(a).

12     111.  The injury and harm suffered by Plaintiff and the Classes was the
13 reasonably foreseeable result of Defendants' breach of its duties.  Defendants knew
14 or should have known that it was failing to meet its duties and its breach would cause
15 Plaintiff and the Classes to suffer the foreseeable harms associated with the exposure
16 of their medical information.

17     112.  As a direct and proximate result of Defendants' negligent conduct,
18 Plaintiff and the Classes now face an increased risk of future harm.

19     113.  Pursuant to Cal. Civ. Code §§ 56.35 and 56.36, Plaintiff and each
20 member of the Classes seek relief including actual damages, nominal statutory
21 damages of $1,000, punitive damages of $3,000, injunctive relief, and attorney fees,
22 expenses and costs.  A recovery of nominal damages does not require that the
23 plaintiff have suffered or have been threatened with actual damages.

24     114.  As a direct and proximate result of Defendants' violation of Cal. Civ.
25 Code §§ 56 *et seq.*, Plaintiff and Class Members now face an increased risk of future
26 harm.

27

28

115.   As a direct and proximate result of Defendants' violation of Cal. Civ. Code §§ 56 *et seq.*, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

116.   Plaintiff and Class Members suffered a privacy injury by having their sensitive medical information disclosed, irrespective of whether or not they subsequently suffered identity fraud or incurred any mitigation damages.  Medical information has been recognized a private sensitive information in common law and federal and state statutory schemes and the disclosure of such information resulted in cognizable injury to Plaintiff and Class Members.

## COUNT THREE

## California Consumer Records Act

117.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

118.   Plaintiff brings this claim individually and on behalf of the National Data Breach Class, or in the alternative, the California Data Breach Sub-Class.

119.   Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person,"  Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonably delay…"

120.   The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was,

First Amended Class Action Complaint

or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

121. Any person or business that is required to issue a security breach notification under the CCRA shall meet all the following requirements:

    a. The security breach notification shall be written in plain language;

    b. The security breach notification shall include, at a minimum, the following information:

        i. The name and contact information of the reporting person or business subject to this section;

        ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

        iii. If the information is possible to determine at the time the notice is provided, then any of the follow:

            1. The date of the breach;

            2. The estimated date of the breach; or

            3. The date range within which the breach occurred. The notification shall also include the date of the notice.

        iv. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

        v. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

        vi. The toll-free telephone number and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

122. The Data Breach described herein constituted a "breach of the security system."

First Amended Class Action Complaint

123.   Defendants are a "business that maintains computerized data that includes personal information that the person or business does not own."

124.   When Blackbaud announced in May of 2020, that it had been the victim of a ransomware attack and data breach, only Defendants knew that the personal information of its patients would potentially be exposed because the patients of Rady's Hospital were not provided with authorizations for Defendants to disclose their Private Information to Blackbaud in violation of CMIA.

125.   Thus, Defendants as the businesses that maintained the computerized data which was provided to Blackbaud needed to provide "notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

126.   Despite Defendants' knowledge of the Blackbaud data breach in May of 2020, Defendants did not inform Plaintiff and Class Members about the Data Breach, affecting their Private Information, under the end of October of 2020 giving the excuse that it took until October 7, 2020 to determine that their patient's Private Health Information was included in the Data Breach.

127.   Defendants were however obligated to identify and disclose to Plaintiff and Class Members, **without unreasonable delay and in the most expedient time possible**, the breach of security of their unencrypted, or not properly and securely encrypted, Private Information, when Defendants knew or reasonably believed such information had been compromised.  This would have been when Defendants were aware of the Blackbaud Data Breach in May of 2020 as patients of Rady's Hospital were not aware their information was in even in the possession of Blackbaud (or Rady's Foundation for that matter).

128.   Instead, Defendants knowing the improper disclosure to Blackbaud to begin with, concealed the Data Breach from the public.

First Amended Class Action Complaint

1      129.   Upon information and belief, no law enforcement agency instructed
2  Defendants that timely notification to Plaintiff and Class Members would impede its
3  investigation.

4      130.   As a result of Defendants' violation of Cal. Civ. Code § 1798.82(b),
5  Plaintiff and Class Members were deprived of prompt notice of the Data Brach and
6  were thus prevented from taking appropriate protective measures, such as securing
7  identity theft protection.  These measures could have prevented some of the damages
8  suffered by Plaintiff and Class Members because their Private Information would
9  have had less value to identity thieves.

10     131.   As a result of Defendants' violation Cal. Civ. Code § 1798.82(b),
11  Plaintiff and Class Members suffered incrementally increased damages separate and
12  distinct from those simply caused by the Data Breach itself.

13     132.   Plaintiff and Class Member seek all remedies available under Cal. Civ.
14  Code § 1798.82(b), including but not limited to the damages suffered by Plaintiff and
15  Class Members as alleged above and equitable relief.

16     133.   Defendants' misconduct as alleged herein is fraud under Cal. Civ. Code
17  § 3294(c)(3) in that it was deceit or concealment of a material fact known to the
18  Defendants only as patients were not aware Defendants furnished their Private Health
19  Information to Blackbaud, and conducted with the intent on the part of Defendants of
20  depriving Plaintiff and Class Members of "legal rights or otherwise causing injury."
21  In addition, Defendants' misconduct as alleged herein is malice or oppression under
22  Cal. Civ. Code § 3294(c)(1) and (c) in that it was despicable conduct carried on by
23  Defendants with a willful and conscious disregard of the rights or safety of Plaintiff
24  and Class Members and despicable conduct that has subjected Plaintiff and Class
25  Members to cruel and unjust hardship in conscious disregard of their rights.  As a
26  result, Plaintiff and Class Members are entitled to punitive damages against
27  Defendants under Cal. Civ. Code § 3294(a).

28

First Amended Class Action Complaint

## COUNT FOUR

## Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1

134. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

135. Plaintiff brings this claim individually and on behalf of all the Classes, or in the alternative, the California Sub-Classes.

136. California established the right to privacy in Article 1, Section 1 of the California Constitution.

137. The State of California recognizes the tort of Intrusion into Private Affairs and adopts the formulation of that tort found in the Restatement (Second) of Torts which states: One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. Restatement (Second) of Torts § 652B (1977).

138. Plaintiff and Class Members had a legitimate and reasonable expectation of privacy with respect to their medical information and were accordingly entitled to the protection of this information against disclosure to and acquisition by unauthorized third parties.

139. Defendants published private details and facts not generally known to the public, not publicly available, and not of legitimate public concern about Plaintiff and Class Members by disclosing and exposing Plaintiff's and Class Members' medical information to Rady's Foundation and to Blackbaud. Further Blackbaud's systems containing Plaintiff's and Class Members' medical information was thereafter hacked by unauthorized third-parties who demanded a ransom on threat of releasing said information. Therefore, it is reasonably likely that such information will become known to the public, including without limitation on the dark web and elsewhere.

First Amended Class Action Complaint

140.   The intrusion was into a place or thing, which was private and is entitled to be private.  Plaintiff and Class Members disclosed their medical information to Rady's Hospital only as part of their use of Rady's Hospital's services, but privately, with the intention that the medical information would be kept confidential and protected from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing.  Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

141. Rady's Hospital's wrongful disclosure to Rady's Foundation and Blackbaud and Rady's Foundation wrongful disclosure to Blackbaud constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

142. Defendants acted with a knowing state of mind when it disclosed Plaintiff's and Class Member's medical information.

143. Acting with knowledge, Defendants had notice and knew that its wrongful disclosure would cause injury to Plaintiff and Class Members.

144. As a proximate result of Defendants' acts and omissions, Plaintiff's and Class Members' medical information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by third parties (Rady's Foundation and Blackbaud) without authorization, causing Plaintiff and Class Members to suffer damages.

145. Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the medical information maintained by Defendants can be accessed, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized persons.

- 33 -

First Amended Class Action Complaint

146.   Plaintiff and Class Members have no adequate remedy at law for these injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT FIVE

## Breach of Implied Contract

147.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

148.   Plaintiff brings this claim individually and on behalf of all the Classes against Rady's Hospital.

149.   When Plaintiff and the Class Members provided their medical information to Rady's Hospital, they entered into implied contracts in which Rady' Hospital agreed to comply with its statutory and common law duties and industry standards to protect their medical information.

150.   Based on the implicit understanding, Plaintiff and Class Members accepted Rady's Hospital offers of health services and provided Rady's Hospital with their medical information.

151.   Plaintiff and Class Members would not have provided their medical information to Rady's Hospital had they known that Rady's Hospital would not safeguard their medical information as promised.

152.   Plaintiff and Class Members fully performed their obligations under the implied contracts with Rady's Hospital.

153.   Rady's Hospital breached the implied contracts by failing to safeguard Plaintiff's and Class Members' medical information when Rady's Hospital disclosed Plaintiff's and Class Members' medical information to Rady's Foundation and Blackbaud without prior valid authorization.

154.   The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Rady's Hospital breach of the implied contract with Plaintiff and Class Members.

First Amended Class Action Complaint

## COUNT SIX

### Breach of Contact

155.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

156.   Plaintiff brings this claim individually and on behalf of all the Classes against Rady's Hospital.

157.   Rady's Hospital entered into binding and enforceable contract with Plaintiff and the other members of the Classes supported by consideration, including payment for services by Plaintiff and the Class Members.   These contracts include terms covering privacy and limiting the use and sharing or Plaintiff's and other Class Members' Private Health Information.   Plaintiff and the other Class Members bargained for an adequate level of security and reasonable care with respect to the us, storage, and sharing of their Private Health Information.

158.   These contracts incorporated Rady's Hospital's privacy policies wherein it promised to protect the privacy of Plaintiff's and Class Member's personal information in accordance with federal and state privacy laws, as well as their own privacy policy.

159.   It was a violation of Rady's Hospital's privacy covenants, warranties, and promises to disclose Plaintiff's and Class Members' Personal Health Information in the manner described above.   As a results of Rady's Hospital's breach of contract, Plaintiff and members of the Classes did not receive the full benefit of their bargain and instead received services that were less valuable than described in their contracts.

160.   As part of the contract between Rady's Hospital and Plaintiff and the Class Members, Rady's Hospital offered to provide health care in exchange for their business and payments from Plaintiff and the Class Members or their insurers on their behalf, Rady's Hospital promised "[It] has a duty and responsibility to safeguard patient medical information[;]" in addition to being compliant with patient privacy and security requirements mandated under federal and state law.

- 35 -

First Amended Class Action Complaint

161.   Plaintiff and Class Members accepted Rady's Hospital's offer and went to, and paid, Rady's Hospital for their health care serves.   Plaintiff and the Class Members contracted for and expected to receive the privacy benefits in accordance with the terms and warranties set forth above.   Rady's Hospital breach the privacy obligations under its contract as set forth above and Plaintiff and the Class Members have been injured and damages as a result thereof.

162.   Plaintiff and the other Class Members performed their obligations under the agreements. Rady's Hospital violated the terms of the contract by disclosing and allowing unauthorized access to Plaintiff's and the other Class Member's Private Health Information for unauthorized purposes without first obtaining Plaintiff's or the other Class Members' consent, or encrypting or otherwise protecting the information in a form which court not reasonably be used to identify them.

163.   Rady's Hospital breach its contracts with Plaintiff and Class Members by failing to comply with applicable laws regarding access, correction, and/or deletion of Private Health Information, notification to affected persons, including without limitation HIPAA, California's Confidentiality of Medical Information Act and other state laws set forth herein, including reasonably safeguard from data breaches.   Plaintiff and Class Members have been injured as a result of Rady's Hospital's breach of contract and are entitled to damages.

164.   As a result of Rady's Hospital's unlawful misconduct and breach of its contract with Plaintiff and the Class Members, Plaintiff and the Class Members have suffered additional pecuniary loss and injury-in-fact, including without limitation the improper disclosure of their Private Health Information, lost benefit of their bargain, love value in their Private Health Information, and lost time and money incurred to mitigate and remediate the effect of the improper and unauthorized disclosures and Data Breach, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

First Amended Class Action Complaint

1

2

**COUNT SEVEN**

**Breach of Implied Covenant of Good Faith and Fair Dealings**

3

4

165.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

5

6

166.   Plaintiff brings this claim individually and on behalf of all the Classes against Rady's Hospital.

7

8

9

10

167.   The law implied a covenant of good faith and fair dealing in every contract. Rady's Hospital entered into a contract with Plaintiff and the other Class Members, which includes terms covering privacy and limited the use and sharing of Plaintiff's and the other Class Members' Private Health Information.

11

12

13

168.   Plaintiff and the other Class Members performed their duties under the agreement.  Rady's Hospital's unlawful and bad faith conduct, as described above, constitutes a breach of the implied covenant of good faith and fair dealing.

14

15

16

17

18

19

20

21

169.   As a result of Rady's Hospital's unlawful misconduct and its breach of the covenant of good faith and fail dealing owed to Plaintiff and the Class Members, Plaintiff and the Class Members have suffered additional pecuniary loss and injury-in-fact, including without limitation the improper disclosure of their Private Health Information, lost benefit of their bargain, lost value in their Private Health Information, and lost time and money incurred to mitigate and remediate the effect of the improper and unauthorized disclosures and Data Breach, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

22

23

**COUNT EIGHT**

**Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, _et seq._**

24

25

170.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

26

27

171.   Plaintiff brings this claim individually and on behalf of all the Classes, or in the alternative, the California Sub-Classes.

28

- 37 -

First Amended Class Action Complaint

172.   The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus & Prof. Code § 17200.

173.   The acts, omissions, misrepresentations, and practices of Defendants as alleged herein constitute business acts and practices.

174.   Defendants' conduct violated certain laws as alleged herein.  By engaged in the said conduct in the course of doing business, Defendants engaged in unlawful business practices in violation of the UCL.

175.   Defendants also engage in conduct that is "unfair" because in obtaining health services from Defendants, Plaintiff and the Class Members reasonably expected Defendants would protect the confidentiality of their private medical information.

176.   Defendants' failure to reasonably protect the confidentiality of Plaintiff's and the Class Members' Private Health Information is also conduct that is likely to deceive reasonable consumers and the public and therefore violates the fraudulent prong.

177.   Defendants' actions were in violation of regulations issues by state and federal entities regarding the use, storage, and protection of Private Health Information, and such statutes, rules and regulations form an alternative legal predicate and basis for recovery to Plaintiff and the Classes to obtain restitution for losses sustained now or in the future.

178.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from further fraudulent acts and practices.

179.   Plaintiff further seeks an order for the restitution and all other damages and injunctive relief available under this case of action.

## **PRAYER FOR RELIEF**

180.   Wherefore, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against Defendants as to each and every cause of action alleged against either of the Defendants, and the following remedies:

- 38 -

First Amended Class Action Complaint

a. An Order declaring this action to be a proper class action, appointing Plaintiff as class representatives, and appointing his undersigned counsel as class counsel.

b. An Order awarding Plaintiff and Class Members appropriate monetary relief, including actual damages, punitive damages, treble damages, statutory damages, exemplary damages, equitable relief, restitution and disgorgement;

c. Award injunctive relief as is necessary to protect the interests of Plaintiff and the Classes;

d. An award of attorneys' fees and costs, as allowed by law;

e. Any other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: March 26, 2021

**LAW OFFICES OF RONALD A. MARRON**

By: */s/ Ronald A. Marron*

RONALD A. MARRON
KAS L. GALLUCCI
ALEXIS WOOD
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

First Amended Class Action Complaint