**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, a minor, by and through Guardian ad Litem, LATASHA POPE, individually and on behalf of all others similarly situated and the general public,<br><br>      Plaintiff,<br>vs.<br><br>RADY CHILDREN'S HOSPITAL-SAN DIEGO, a California Corporation, and RADY CHILDREN'S HOSPITAL FOUNDATION – SAN DIEGO<br><br>      Defendants. | Case No. 3:21-cv-00114-WQH-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JOHN DOE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:   June 7, 2021<br><br>Judge:  Hon. William Q. Hayes<br>Ctrm:  14B |

# **TABLE OF CONTENTS**

I.     INTRODUCTION AND BACKGROUND ...........................................1

II.    ARGUMENT .................................................................................2

  A.   Plaintiff Plausibly Pleads Violations Under The CMIA .............................2

     i.   The Disclosed Information Is Medical Information .................................4

     ii.   CMIA Applies To Rady Foundation...........................................5

     iii.   Neither Civil Code § 56.10(c)(14) Nor Federal Law Authorize Rady Hospital To Share PHI With Rady Foundation And/Or Blackbaud..................6

     iv.   § 56.16 Does Not Apply.......................................................9

     v.   Defendants Negligently Maintained Plaintiff's and Class Members' Medical Information .................................................................10

     vi.   Plaintiff's and Class Members' Medical Information Was Viewed By Unauthorized Persons ...............................................................12

  B.   Plaintiff Adequately Pleads A CRA Violation ...........................13

     i.   Plaintiff's CRA Claim Satisfies Rule 9(b)..................................16

  C.   Plaintiff Plausibly Pleads Constitutional Claim ..........................17

  D.   Plaintiff Properly Pleads Further Intrusions ...............................18

  F.   Injunctive Relief Is Warranted ....................................................19

  G.   Plaintiff Plausibly Alleges Breach Of Contract...........................19

  H.   Plaintiff Plausible Alleges Breach Of Implied Contract .............21

  I.   Plaintiff Plausibly Alleges Breach Of Implied Covenant Of Good Faith And Fair Dealing.......................................................................22

  J.   Plaintiff Has Standing to Bring His UCL Claims and Has Sufficiently Plead Them ...................................................................................23

i

*Doe v. Rady Children's Hospital et al.*, Case No. 3:21-cv-00114-WQH-AHG

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

K.   Leave to Amend Should be Freely Given.....................................................25

III.   CONCLUSION............................................................................................25

*Doe v. Rady Children's Hospital et al.*, Case No. 3:21-cv-00114-WQH-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF AUTHORITIES**

**Cases**

*Acri v. Varian Assocs., Inc.*,
  121 F.3d 714 (9th Cir. 1997) ...............................................................22

*Antman v. Uber Techs, Inc.*,
  2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ....................................25

*Antman v. Uber Techs, Inc.*,
  No. 15-cv-01175-LB, 2018 WL 2151231 (N.D. Cal. May 10, 2018)...............15

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (2019) ...............................................................16

*Brooks v. E.J. Willig Truck Transp. Co.*,
  40 Cal.2d 669 (1953) ...........................................................................11

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) .............................................................22

*Carson v. Depuy Spine, Inc.*,
  365 F. App'x 812 (9th Cir. 2010) ........................................................11

*Castillo v. Seagate Tech., LLC*,
  2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ...................................22

*Colleen M. v. Fertility & Surgical Assoc. of Thousand Oaks*,
  132 Cal.App.4th 1446 (2005) ...................................................... 10, 17

*Daly v. United Healthcare Ins.*,
  No. 10-CV-03032, 2010 WL 4510911 (N.D. Cal. Nov. 1, 2010).....................22

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp.*,
  868 F. Supp. 2d 1042 (D. Or. 2011) ....................................................21

*Eisenhower Medical Center v. Superior Court*,
  226 Cal.App.4th 430 (2014) ...........................................................4, 9

iii

*Farmers Ins. Exchange v. Superior Court,*
  2 Cal.4th 377 (1992) ........................................................................24

*Harris v. Burlington N. Santa Fe R.R.,*
  2013 WL 1211668 (C.D. Cal. July 12, 2013)...................................12

*Hemeed-Bolden v. Forever 21 Retail, Inc.,*
  No. CV 18-03019 SJO (JPRx), 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018)....21

*In re Adobe Sys., Inc. Privacy Litig.,*
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ......................................... 23, 24

*In re Anthem, Inc. Data Breach Litig.,*
  162 F. Supp. 3d 953 (N.D. Cal. 2016) .......................................... 23, 24

*In re Anthem, Inc. Data Breach Litig.,*
  2017 WL 3029783 (N.D. Cal. May 27, 2016)...................................20

*In re Facebook Privacy Litig.,*
  572 F. App'x 494 (9th Cir. 2014) ....................................................21

*In re Facebook, Inc., Consumer Privacy User Profile Litigation,*
  402 F. Supp. 3d 767 (2019) ........................................................ 18, 20

*In re LinkedIn User Privacy Litig.,*
  2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) .................................24

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,*
  No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020). passim

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
  996 F. Supp. 2d 942 (S.D. Cal. 2014).............................................19

*In re Yahoo! Inc. Customer Data Security Breach Litig.,*
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................. 15, 21, 22, 23

*In re Zappos.com, Inc.,*
  888 F.3d 1020, 1027-29 (9th Cir. 2019).........................................16

*Jones v. Awad,*
  39 Cal.App.5th 1200 (2019)...........................................................11

iv

*Kearns v. Ford Motor Co.*,
   567 F3d 1120 (9th Cir. 2009) ...............................................................25

*Lovell v. P.F. Chang's China Bistro, Inc.*,
   No. C-14-1152 RSL, 2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ............22

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................19

*McIntyre v. The Colonies-Pac., LLC*,
   228 Cal. App. 4th 664 (2014) ...............................................................11

*McNair v. City and County of San Francisco*,
   5 Cal.App.5th 1154 (2016) ...............................................................7, 8

*Miles v. Deutsche Bank Nat'l Tr. Co.*,
   236 Cal. App. 4th 394 (2015) ...............................................................20

*Norman v. Life Care Centers of America, Inc.*,
   107 Cal.App.4th 1233 (2003) ...............................................................11

*Northstar Financial Advisors Inc. v. Schwab Investments*,
   779 F.3d 1036 (9th Cir. 2015) ...............................................................21

*Pettus v. Cole*,
   49 Cal. App. 4th 402 (1996), *as modified on denial of reh'g* (Oct. 15, 1996)......4

*Regents of Univ. of Cal. v. Superior Court*,
   220 Cal.App. 4th 549 (2013) ...............................................................13

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ...............................................................23

*Stasi v. Inmediata Health Group Corp*,
   No. 19cv2353JM(LL), 2020 WL 6799437 (S.D. Cal. Nov. 19, 2020) .............13

*Stephens v. City of Vista*,
   994 F.2d 650 (9th Cir. 1993) ...............................................................20

*Sutter Health v. Superior Court*,
   227 Cal. App. 4th 1546 (2014) ...............................................................12

v

*Walters v. Kimpton Hotel & Rest. Grp., LLC,*

    2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) ....................................................22

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................................23

Cal. Civ. Code § 56.05(a) ...........................................................................................3

Cal. Civ. Code § 56.05(d) ...........................................................................................6

Cal. Civ. Code § 56.05(j) ............................................................................................2

Cal. Civ. Code § 56.10 .............................................................................................2, 5

Cal. Civ. Code § 56.10(a) ...........................................................................................2

Cal. Civ. Code § 56.10(c)(3) .......................................................................................6

Cal. Civ. Code § 56.10(c)(14) ..................................................................................6, 7

Cal. Civ. Code § 56.10(d) ...........................................................................................3

Cal. Civ. Code § 56.11 ............................................................................ 3, 4, 5, 7, 9

Cal. Civ. Code § 56.13 ................................................................................................6

Cal. Civ. Code § 56.16 ................................................................................................9

Cal. Civ. Code § 56.21 ................................................................................................3

Cal. Civ. Code § 56.36 ............................................................................................5, 6

Cal. Civ. Code § 1798.82(a) ................................................................................ 13, 14

**Other Authorities**

Judicial Council of California Civil Jury Instruction 360 ........................................20

**Rules**

Fed. R. Civ. P. 15(a).................................................................................................25

**Regulations**

45 C.F.R. § 160.103 ....................................................................................................9

45 C.F.R. § 160.203 ....................................................................................................7

45 C.F.R. § 164.514(f)(1) ...........................................................................................9

45 C.F.R. § 164.514(f)(2)(i)........................................................................................9

vi

45 C.F.R. § 164.520(b)(1) ............................................................................9

65 Fed. Reg. 82471 (Dec. 28, 2000) ...........................................................7

*Doe v. Rady Children's Hospital et al.*, Case No. 3:21-cv-00114-WQH-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

## I.  <u>INTRODUCTION AND BACKGROUND</u>

Defendant Rady Children's Hospital-San Diego ("Rady Hospital") voluntarily and wrongfully disclosed at least 19,788 minor patients' Private Health Information ("PHI")[1] to Defendant Rady Children's Hospital Foundation-San Diego ("Rady Foundation") and both Defendants unlawfully disclosed that same PHI, *unencrypted*, to Blackbaud, Inc. ("Blackbaud") without the requisite consent pursuant to California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56 *et seq.*, among other violations.

Rady Hospital is the largest children's hospital by admissions in California. FAC ¶ 1. Rady Foundation is Rady Hospital's philanthropic resource. *Id.* at ¶ 2. Blackbaud supplies fundraising and donor management software to Defendants. *See* Ex. 1 to the FAC. On October 28, 2020, "Defendants announced a data breach involving the private medical information of approximately 19,788 of its patients" had occurred between February 7, 2020 and June 4, 2020. *Id.* at ¶ 3. The breach involved *unencrypted* patients' PHI. *Id.* at ¶¶ 29, 57-58. On October 29, 2020, Defendants notified its patients of the data breach blaming Blackbaud. FAC ¶¶ 26-30; *see also* Exs. 1 & 2. Notably lacking from the notification is any explanation as to why Blackbaud had Plaintiff's unsecured PHI on a backup server in the first place or the date when Blackbaud notified Defendants of the data breach.[2] *Id.*

The Federal Health Insurance Portability and Accountability Act ("HIPAA") provides a baseline of patients' rights and protections for patient health information. CMIA provides a greater standard of protection of privacy than HIPAA for those

---

[1] The Private Health Information includes the patient's name, address, date of birth, physician name, department that patient was admitted, and date of admission.
[2] It is yet to be determined whether Rady Hospital made the disclosure at issue directly to Blackbaud and/or whether Rady Hospital made the disclosure to Rady Foundation who thereafter unlawfully disclosed the information to Blackbaud. FAC at ¶ 34. In *all* instances the transfers of private health information were without prior authorization and in violation of the law. *Id.*

1

patient's located in California, which is the basis of this lawsuit. Plaintiff's individually identifiable medical information as defined under Cal. Civ. Code § 56.05(j) was provided to Rady Hospital in confidence when he received medical services. FAC ¶ 69. It was expected that Rady Hospital would lawfully maintain the privacy of this medical information/PHI and expected that Defendants would obtain the mandatory consent required by CMIA to share the PHI of their minor patients for fundraising purposes with Rady Foundation and Blackbaud. As a direct and proximate result of Defendants' improper disclosure of PHI, and the data breach which thereafter occurred, Plaintiff and Class Members have been placed at an immediate, substantial and continuing increased risk of harm from fraud and identity theft, and now seek redress. FAC ¶ 74.

## II.   ARGUMENT

### A.   Plaintiff Plausibly Pleads Violations Under The CMIA

There is no question that the PHI entrusted to Rady Hospital was disclosed to both Rady Foundation and Blackbaud. Defendants do not deny it. Instead, Defendants make various arguments attempting to justify their improper disclosures, all of which should be rejected.

In short, the statutory scheme under CMIA is aimed to prohibit disclosure of patient medical information "without first obtaining authorization." *See* Cal. Civ. Code § 56.10. CMIA's general prohibition against disclosure of medical information is set forth in § 56.10(a), which provides:

> (a)A provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan ***without first obtaining an authorization***, except as provided in subdivision (b) or (c). (Emphasis added).

Subdivision (b) of § 56.10 provides a list under which a provider of health care, a health care service plan, or contractor must disclose medical information without prior authorization. Subdivision (c) provides a list under which these entities may

2

disclose such information without prior authorization. **All other disclosures require prior authorization**. § 56.10(d) reiterates this restriction and states that:

> <u>Except to the extent expressly authorized</u> by a patient or enrollee or subscriber <u>or as provided by subdivisions (b) and (c)</u>, a provider of health care, health care service plan, contractor, or corporation and its subsidiaries and affiliates ***shall not*** further disclose medical information regarding a patient . . . to a person or entity that is not engaged in providing direct health care service to the patient or his or her provider of health care or health care service plan or insurer or self-insured employer. (Emphasis added).

Neither subdivision (b) or (c) under § 56.10 include disclosing medical information in connection with fundraising activities as an exception to the general prohibition on disclosure. In fact, CMIA's legislative history demonstrates that the state legislature intended to prohibit such disclosures. CMIA was amended in 2008 through Assembly Bill 211 to "ensure the enforcement of state law mandating the confidentiality of medical information and to impose administrative fines for the unauthorized use of medical information." *See* Ex. 1 to Plaintiff's Request for Judicial Notice ("RJN"). The bill was passed in response to repeated breaches of confidential information at hospitals and other facilities including a "high-profile case involv[ing] the release of thousands of patient records to an outside vendor for fundraising purposes." *Id.* The disclosure "had the effect of disclosing that patients had received care at a specific hospital." *Id.*

To obtain prior authorization for all disclosures not listed under § 56.10 (b) or (c) (which are the disclosures at issue here), the entity or individual must obtain valid authorization as provided under § 56.11 or 56.21[3]. *See* Civ. Code § 56.05(a). "The 'authorization' requirements, which are found in § 56.11, are detailed and demanding, reflecting the Legislature's interest in assuring that medical information

---

[3] § 56.21 defines the type of authorization necessary for an employer to disclose medical information concerning an employee.  It does not apply here.

*Doe v. Rady Children's Hospital et al.*, Case No. 3:21-cv-00114-WQH-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

may be disclosed only for a narrowly defined purpose, to an identified party, for a limited period of time." *Pettus v. Cole*, 49 Cal. App. 4th 402 (1996), *as modified on denial of reh'g* (Oct. 15, 1996). § 56.11 states in relevant part:

> "An authorization for the release of medical information by a provider of health care shall be valid if it: (a) Is handwritten by the person who signs it or is in a type face no smaller than 14–point type; (b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization; (c) Signed and dated; (d) States the specific uses and limitations on the types of medical information to be disclosed. … (h) States a specific date after which the provider of health care ... is no longer authorized to disclose the medical information; (i) Advises the person signing the authorization of the right to receive a copy of the authorization."

It is undisputed that Defendants failed to provide this authorization.

### i.   <u>The Disclosed Information Is Medical Information</u>

Defendants, acceding that the required authorization was not provided, attempt to justify their actions by claiming the information involved was not "medical information." Yet, the information involved is medical information in its most obvious sense. It cannot be seriously disputed that one can derive important specific and private facts regarding a patient's medical history, mental or physical condition, and/or treatment from the names of the patients' treating physicians, the dates of admission, and the medical departments the patients were admitted.[4]

Defendants' reliance on *Eisenhower Medical Center v. Superior Court* does not help their position as the information in *Eisenhower* only involved non-medical identifying information and medical record numbers ("MRN"). 226 Cal.App.4th 430, 432 (2014). The MRN gave *no* indication of whether a person had received medical treatment, and even if it did, the *sole* fact that an individual was a patient was not in itself medical information. *Id.* at 435-36. Unlike in *Eisenhower*, the

---

[4] Further, discovery may reveal additional information was released to Rady Foundation and Blackbaud beyond what was admitted in Defendants' press release.

information at issue here clearly goes beyond indicating whether the individual was merely a patient of the hospital – it goes to the patient's actual medical condition.

The names of patients' treating physicians, the patients' dates of admission, and the departments of service reveal *specific* information pertaining to a patient's treatment and medical history. For example, if a patient is admitted to the neurology department with a specific treating physician that specializes in epilepsy, one can certainly derive the medical history of that child. This is extremely different from mere knowledge that the child was simply admitted to the hospital. What was disclosed here is clearly private medical information.[5]

### ii.   CMIA Applies To Rady Foundation

Defendants' arguments as to whether Rady Foundation falls within the listed entities under Civil Code §§ 56.10 and 56.101 improperly conflates the issue of whether Rady Foundation is subject to the CMIA's prohibition on disclosures. Civil Code § 56.11 clearly states that "**[a]ny person or entity** that wishes to obtain medical information pursuant to subdivision (a) of Section 56.10, other than a person or entity authorized to receive medical information pursuant to subdivision (b) or (c) of Section 56.10 . . . **shall obtain a valid authorization** for the release of this information." (Emphasis added). As detained herein, neither subdivision (b) or (c) authorizes the release of PHI for fundraising purposes. Rady Foundation was thus legally obligated to obtain an authorization under Civil Code § 56.11 before receiving the medical information from Rady Hospital and further disclosing the information to Blackbaud. Because it is undisputed that Rady Foundation did not obtain an authorization, it is liable under Civil Code § 56.36 as "**a person or entity** who has negligently released confidential information…in violation of this part" (emphasis added). "[T]his part" refers to Part 2 of Section 56 which includes § 56.11,

---

[5] Defendants' reliance on § 56.16 does not change this analysis because, among other reasons, no authorized "inquiry concerning a specific patient" was made by the Foundation or Blackbaud. *See* Section A, Subsection iv below.

not only § 56.10 and § 56.101 as Defendant argues. Importantly, according to § 56.36,  actions may be against any "person or entity" not only providers of health care, health care service plans, or contractors – thus making Rady Foundation a proper defendant here.

Notwithstanding, Rady Foundation also easily falls under the term "contractor" as defined in § 56.05(d). Specifically, Rady's Foundation falls under the term "medical service organization" as the philanthropic resource assisting Rady Hospital administratively to gain funding to provide medical services.

Last, also notwithstanding the above, Rady Foundation, as a "recipient" of medical information from Rady Hospital, may not further disclose the medical information it receives except in accordance with a new authorization that meets the requirements of Section 56.11. *See* Cal. Civ. Code § 56.13. Likewise, even if it is later determined that Rady Hospital was allowed pursuant to an exception to provide PHI to Rady Foundation (it was not), Rady Foundation would still be prohibited from sharing that information with Blackbaud pursuant to § 56.10(c)(3).[6]

For the same reasons above, § 56.101(a), also applies to Rady Foundation.

### iii.  Neither Civil Code § 56.10(c)(14) Nor Federal Law Authorize Rady Hospital To Share PHI With Rady Foundation And/Or Blackbaud

Defendants argue that because HIPAA authorizes disclosure of health information for fundraising purposes, § 56.10(c)(14)[7] should authorize Rady

---

[6] § 56.10(c)(3): "The information may be disclosed to a person or entity that provides billing, claims management, medical data processing, or other administrative services for providers of health care or health care service plans or for any of the persons or entities specified in paragraph (2). However, information so disclosed shall not be further disclosed by the recipient in a way that would violate this part."

[7] § 56.10(c)(14) provides: [W]hen the disclosure is otherwise specifically authorized by law, including, but not limited to, the voluntary reporting, either directly or indirectly, to the federal Food and Drug Administration of adverse events related to drug products or medical device problems, or to disclosures made pursuant to subdivisions (b) and (c) of Section 11167 of the Penal Code by a person making a

Hospital to disclose Plaintiff's and Class Member's medical information to Rady Foundation and/or Blackbaud. But HIPAA expressly bars preemption of state laws when the state law relates to the privacy of individually identifiable health information and is more stringent. *See* 45 C.F.R. 160.203.[8] Importantly, HIPAA acts as a mandatory floor, not a limit, with regard to patient privacy. *See* 65 Fed. Reg. 82471 (Dec. 28, 2000) (As the Department explained when announcing the Privacy Rule: "It is important to understand this regulation as a new federal floor of privacy protections that does not disturb more protective rules of practices . . . The protections are a mandatory floor, which other governments and any covered entity may exceed.").

CMIA provides stronger privacy protections than HIPAA for medical information thus trumping HIPAA. Important here, the requirements for a valid "authorization" under the CMIA are far more detailed and extensive than those set forth under HIPAA.[9] In light of the stronger privacy protections provided under the CMIA, it does not follow that Civil Code § 56.10(c)(14) would include the lesser restriction set forth under 45 C.F.R. § 164.514(f)(1) and (2).

The court's analysis of Civil Code § 56.10(c)(14) in *McNair v. City and County of San Francisco*, 5 Cal.App.5th 1154 (2016), which Defendants cite, is instructive. McNair's suit arose after his doctor sent a letter the Department of Motor

---

report pursuant to Sections 11165.9 and 11166 of the Penal Code, provided that those disclosures concern a report made by that person.

[8] 45 C.F.R. § 160.203 provides: A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met: . . . (b) The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.

[9] Cal. Civ. Code § 56.11, cf. 65.

Vehicles disclosing McNair's confidential medical history and health conditions. *Id.* at 1156. In finding that § 56.10(c)(14) applied, the court held:

> [A] voluntary disclosure of confidential information falls within the reach of subdivision (c)(14) of section 56.10 if a public policy exists encouraging such disclosure; the disclosure involves issues of public safety; and it is a communication which would otherwise be immunized by the litigation privilege."

*McNair*, 5 Cal.App.5th at 1168. Reporting the adverse effects of drug products or medical device problems to the federal Food and Drug Administration, or reporting child abuse or neglect, both of which are examples set forth under § 56.10(c)(14) fall within the scope of the *McNair* rule. Conversely, under the *McNair* rule, § 56.10(c)(14) would not apply here because Defendants allege no public policy encouraging hospitals to disclose confidential medical information for fundraising purposes, and even if they did, such disclosure does not involve public safety. Defendants also do not argue that the alleged disclosure would fall under the scope of the litigation privilege. Because § 56.10(c)(14) does not apply and because Defendants assert no other exceptions, HIPAA cannot authorize Rady Hospital to disclose medical information to Rady Foundation and/or Blackbaud without a prior valid authorization.

Given that HIPAA does not authorize the disclosures, Defendants' assertion that its (unsigned) Joint Notice of Privacy Practices (the "Notice") notified patients that Rady Hospital may use their medical information for fundraising purposes is irrelevant because the Notice does not meet the requirements of a valid "authorization." *See* Ex. 3 to the FAC.[10] Importantly, the Notice does not state that information will be shared with third parties and does not include a written release

---

[10] Defendants include reference to Plaintiff's Ex. 3 of the FAC instead of including a signed copy by a legal guardian of the Plaintiff, which assumes this Notice was not even provided to any legal guardian.

"separate from any other language present on the same page" that can then be "executed by a signature which serves no other purpose than to execute the authorization." *See* Cal. Civ. Code § 56.11.

Even if HIPAA authorized Rady Hospital to disclose its patients' medical information to Rady Foundation (it does not), Defendants' argument fails for three additional reasons. First, Rady Foundation, as a recipient of medical information from Rady Hospital was subject to the CMIA under § 56.13. Therefore, Rady Hospital as well as Rady Foundation was required to obtain a valid authorization as defined under § 56.11 before disclosing said information to Blackbaud. Second, HIPAA's provision regarding disclosing protected health information for fundraising purposes only permits covered entities to use or disclose the information to a business associate or to an institutionally related foundation. *See* 45 C.F.R. § 164.514(f)(1). Covered entities include health plans, health care providers, and health care clearinghouses. 45 C.F.R. § 160.103. Rady Foundation does not fall under any of these definitions. Last, Rady Hospital cannot rely on HIPAA because Rady Hospital does not actually present its patients with the contents of the Notice. FAC at 46, n.1. HIPAA requires at a minimum that covered entities provide its patients with a notice specifically informing them that protected health information may be disclosed for fundraising purposes. *See* 45 C.F.R. § 164.514(f)(2)(i); *see also* 45 C.F.R. § 164.520(b)(1).

### iv.    § 56.16 Does Not Apply

§ 56.16 applies when there has been a request for information "concerning a specific patient." *See* Cal. Civ. Code § 56.16; *see also Eisenhower*, 226 Cal.App.4th at 436. Here, no authorized "inquiry concerning a specific patient" has been alleged or argued. Rather Defendants' voluntarily and without inquiry disclosed the medical information of its patients for fundraising purposes.

Additionally, § 56.16 only permits the release of information that is not medical information. *See* Cal. Civ. Code § 56.16; *see also Colleen M. v. Fertility &*

9

*Surgical Assoc. of Thousand Oaks*, 132 Cal.App.4th 1446, 1474 (2005). As discussed, the information involved here is clearly "medical information." Finally, even if the disclosed information fell within the scope of § 56.16 (it does not), Defendants' argument fail because Rady Hospital's disclosure authority under § 56.16 is subject to two important limits. "The first limit on the health care provider's disclosure of patient information is the duty to exercise discretion." *Id.* at 1475. The duty of discretion "implies a duty on the part of the provider to develop standard policies and procedures as to what information will be disclosed to whom, to train its employees in the execution of these policies and procedures and to monitor and enforce employees' compliance with the provider's standards." *Id.* Defendants have not shown that Rady Hospital fulfilled this duty. Defendants produced no evidence as to its policies and practices, if any, in responding to any inquiry concerning a specific patient and how these policies and practices, if they exist, compare to the policies and practices of other providers in the same field and the recommendations of organizations representing such providers.

"The second limit on the health care provider's disclosure of patient information is the prohibition against disclosing anything other than 'general' information concerning the reason for treatment, the nature of the medical problem and the patient's condition." *Colleen M.*, 132 Cal.App.4th at 1475. Defendants have not shown that the information disclosed was sufficiently "general." Defendants do not present any evidence of the practice among health care providers concerning the disclosure of such information, and nor could it as Defendants' policies are clearly inferior to other California hospitals. *See id.* at 1476.

### v. Defendants Negligently Maintained Plaintiff's and Class Members' Medical Information

Defendants argue that Plaintiff failed to allege facts that Defendants acted negligently – Defendants are wrong. Negligence is shown through the existence of a legal duty of care, a breach of that duty, and proximate cause resulting in injury.

*McIntyre v. The Colonies-Pac., LLC*, 228 Cal. App. 4th 664, 671 (2014) (citation omitted).  Negligence per se "can be applied generally to establish a breach of due care under any negligence-related cause of action." *Jones v. Awad*, 39 Cal.App.5th 1200, 1210 (2019) citing *Norman v. Life Care Centers of America, Inc.*, 107 Cal.App.4th 1233, 1248 (2003). "Therefore, the doctrine of negligence per se is within the scope of pleadings that allege general negligence, as proof of a breach of duty is not limited to common law standards of care." *Id.* at 1211 citing *Brooks v. E.J. Willig Truck Transp. Co.*, 40 Cal.2d 669, 680 (1953).

To establish a viable negligence per se theory, Plaintiff must allege: "(1) the defendant violated a statute or regulation; (2) the violation caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect." *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010) [citation omitted].

Both Rady Hospital and Rady Foundation are subject to the CMIA. Defendants therefore have a legal duty to reasonably protect the confidentiality of the medical information that it maintains, preserves, and stores. *See generally* Cal. Civ. Code §§ 56 *et seq.*

Plaintiff plausibly pleads this breach under a negligence per se theory of liability. FAC ¶¶ 92-100. Plaintiff alleges Defendants' disclosure of Plaintiff's and Class Members' medical information was a violation of § 56.10(a). FAC ¶ 107. Defendants' violation of the statute caused injury to Plaintiff and Class Members, "including without limitation the improper disclosure of their confidential medical information and lost time and money incurred to investigate, mitigate, and remediate the effects of the Data Breach that resulted." FAC ¶ 96. But for Defendants' wrongful disclosure, Plaintiff and Class members data would not have been a part of the data breach. Defendants' violation of § 56.10(a) was therefore a substantial factor in bringing about the harms suffered by Plaintiff and Class Members. FAC ¶

11

97. Because the CMIA was designed to protect individuals' medical information, Plaintiff and Class Members are part of the class of persons that CMIA was designed to protect and the harms they suffered is the type of harm CMIA was designed to prevent. FAC ¶¶ 98-99. Accordingly, Plaintiff plausibly pleads a breach of Defendants' duties under the CMIA.

Plaintiff further alleges that "[a]s a direct and proximate result of Defendants' violation of Cal. Civ. Code § 56.10(a), Plaintiff's and Class Members' PHI was viewed not only by Rady's Foundation and Blackbaud but (in the case of the Data Breach Classes) was also further viewed by the unauthorized hackers who stole Plaintiff's and Class Members' Private Information from Blackbaud." FAC ¶ 107. "As a direct and proximate result of Defendants' negligent conduct, Plaintiff and the Classes now face an increased risk of future harm." Therefore, Plaintiff plausibly pleads an injury proximately caused by Defendants' breach of duties under the CMIA.

Although Plaintiff concedes that negligence *per se* is an evidentiary presumption in California, Plaintiff is required to allege facts to support its application. *See Harris v. Burlington N. Santa Fe R.R.*, 2013 WL 1211668, at *2-3 (C.D. Cal. July 12, 2013). Plaintiff does so here, and requests leave to "plead facts to support application of the negligence per se doctrine within the negligence cause of action in an amended complaint." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.,* No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) ("*Solara*").

### vi. **Plaintiff's and Class Members' Medical Information Was Viewed By Unauthorized Persons**

Contrary to Defendants' suggestion, Plaintiff has plausibly alleged that his unencrypted PHI was viewed by Rady Foundation, Blackbaud and the hackers (all unauthorized persons). Defendants' reliance on *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546 (2014) ("*Sutter*") and *Regents of Univ. of Cal. v. Superior Court*,

12

220 Cal.App. 4th 549 (2013) ("*Regents*") is inapposite as both of those cases involved the theft of computers that included data but where it was *unknown* if that data was ever accessed. *Stasi v. Inmediata Health Group Corp*, No. 19cv2353JM(LL), 2020 WL 6799437 (S.D. Cal. Nov. 19, 2020) sheds light on the matter. There the court found that *Regents* and *Sutter* did not preclude plaintiffs' claims under § 56.101(a) because plaintiffs repeatedly alleged their information was viewed by unauthorized persons. *Id.* at *15.

Likewise, here, Plaintiff alleges that his and Class Members' medical information was viewed by unauthorized parties and the allegations are made plausible by the facts pled in this case. FAC ¶¶ 57-58. Unlike in *Sutter* and *Regents*, the medical information involved was not password protected or encrypted. The facts in this case are further distinguishable in that there was a demand for ransom for the stolen medical information. No such facts exist in *Sutter* and *Regents*. The fact that hackers were able to obtain unencrypted data, ascertain its value and demand ransom on threat of further disclosing the information demonstrates the plausibility of Plaintiff's allegations.

## B.   Plaintiff Adequately Pleads A CRA Violation

Defendants, with no supportive authorities, argue that the CRA is inapplicable because Rady Hospital's or Rady Foundation's security system was not breached. This argument is unavailing as § 1798.82(a) does *not* require the business to own the security system, rather the business must own or license the data. *See* Cal. Civ. Code § 1798.82(a). In other words, a business's duty is triggered when the security system where a business housed the computerized data it owns or licenses is breached.

§ 1798.82(a) does not define "own or license." However, § 1798.81.5 of the CRA states:

(a)(1) It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own, license, or

13

maintain personal information about Californians to provide reasonable security for that information.

(2) For the purpose of this section, the terms 'own' and 'license' include personal information that a business retains as part of the business' internal customer account or for the purposes of using that information in transactions with the person to whom the information relates."

Here, Rady Hospital, as a provider of health care, obtained the personal information of its patients for the purpose of using that information when providing health services to said patients. Rady Hospital thus "owned" or "licensed" its patients' personal information as defined under § 1798.81.5(a)(2). Accordingly, Rady Hospital's duty under the CRA (as well as the Foundation's) was triggered when the security system where Rady Hospital and Rady Foundation housed the medical information that Rady Hospital retained from its patients was breached. Defendants acknowledged this duty when sending notice of breach letters to the affected patients and sending notice to the attorney general. *See* Dkt. No. 13-2.

Once the duty to disclose is triggered under the CRA, disclosure of the breach must "be made in the most expedient time possible and without unreasonable delay." § 1798.82(a). To bring a claim, an injury must have occurred as a result of the delayed notification. *Solara*, 2020 WL 2214152, *8. This may be shown by alleging the delay prevented plaintiff "from taking steps to protect their personal information from identity theft." *Id.*

Plaintiff alleges that "[w]hen Blackbaud announced in May of 2020, that it had been the victim of a ransomware attack and data breach, only Defendants knew that the personal information of its patients would potentially be exposed because the patients of Rady's Hospital were not provided with authorizations for Defendants to disclose their Private Information." FAC ¶ 124. Thus, notice of Blackbaud's breach would not put Class members on notice that their information was included in the breach – only Defendants could provide this notice. "Despite Defendants' knowledge of the Blackbaud data breach in May of 2020, Defendants did not inform

14

Plaintiff and Class Members about the Data Breach until October of 2020." FAC ¶ 126. As a result, Plaintiff and the Classes were "prevented from taking appropriate protective measures, such as securing identity theft protection." FAC ¶ 130.

Under these facts, it can reasonably be inferred that Defendants reasonably believed Plaintiff's and Class Members' medical information had been compromised as far back as May of 2020. A five-month delay is unreasonable. *See, e.g. Solara*, 2020 WL 2214152, *8. Defendants' contention that no specific date is alleged is premature and "better suited for a motion for summary judgment when the record is more fully developed." *Id.* It can further be reasonably inferred that Defendants' delay prevented Plaintiff and the Classes from mitigating the fallout from their information being stolen, such as obtaining identify theft protection. *See id.*; *see also In re Yahoo! Inc. Customer Data Security Breach Litig.,* 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) (finding incremental harm adequately plead when plaintiffs plausibly alleged that they could not take mitigation steps based upon delay).

Defendants' focus on the fact that Plaintiff is a minor only highlights the harm resulting from Defendants' delay. Given a child's lack of credit history, their information can be used to create a "clean slate identity." This is more difficult to detect because a bank or credit bureau is unlikely to suspect suspicious activity when a person uses a child's name to open a credit line; as far as the bank or credit bureau is concerned, the false identity is real given the lack of credit history.

Defendants cite *Antman v. Uber Techs, Inc.*, No. 15-cv-01175-LB, 2018 WL 2151231 (N.D. Cal. May 10, 2018) ("*Antman*"), but the information involved was names, driver's license numbers, bank account numbers, and routing numbers. *Antman*, at *10. This is not the same as the PHI involved here. A bank account or routing number does not provide identity thieves with the wealth of information that is disclosed with addresses, dates of birth, and information pertaining to medical history and treatment. Instead, the information involved in this case is more

15

analogous to that involved in *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (2019), which involved names, email addresses, telephone numbers, dates of birth, work and education history, hometown, relationship status, and photographs. In *Bass*, the court stated that whether there is a plausible injury of future identify theft is determined not by "look[ing] at the minutia of what information had been taken – such as credit card information or social security numbers" but by determining "whether the data taken 'gave hackers the means to commit fraud or identity theft.'" *Id.* at 1034 quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027-29 (9th Cir. 2019). The court held that "someone's date of birth, hometown, and high school" gave hackers such means because the "information can now forever be wielded to identify [the plaintiff] and target him in fraudulent schemes and identity theft attacks." *Id.* "The rest of the information taken . . . now in the hands of nefarious actors, will provide further ammo." *Id.*

### i.  **Plaintiff's CRA Claim Satisfies Rule 9(b)**

Plaintiff alleges the elements required for fraudulent misrepresentation and fraudulent omission. When Plaintiff and Class Members agreed to pay for health services from Rady Hospital, they entered into an agreement wherein Rady Hospital agreed to comply with its statutory and common law duties. FAC ¶¶ 149, 158. Defendants knew this was false because Defendants thereafter furnished Plaintiff's and Class Members' medical information to Blackbaud in violation of the CMIA. FAC ¶ 133. Defendants made the misrepresentation and/or omission with the intent to deprive Plaintiff and Class Members of their rights under the CMIA. FAC ¶ 133. Because Plaintiff and Class Members did not know their medical information had been disclosed to Blackbaud, they were prevented from taking appropriate protective measures when Blackbaud first discovered the breach in May of 2020 until Defendants finally notified them in October of 2020. FAC ¶ 130. Defendants' contention that the Notice undercut Plaintiff's claim of fraud is unavailing because Plaintiff alleges Rady Hospital did not provide its patients with the contents of the

16

Notice. FAC ¶ 46, n.1. Moreover, the Notice has no mention of Blackbaud. *See* Ex. 3 to FAC. Therefore, Plaintiff adequately pleads a fraudulent misrepresentation and/or omission meeting Rule 9(b)'s heightened pleading requirements.

Last, Defendants' contention that Plaintiff fails to show actual reliance is without merit because Plaintiff alleges "Plaintiff and Class Members would not have provided their medical information to Rady's Hospital had they known that Rady's hospital would not safeguard their medical information as promised." FAC ¶ 151.

### C.   Plaintiff Plausibly Pleads Constitutional Claim

Defendants argue Plaintiff could not have a reasonable expectation of privacy because § 56.16 authorized disclosure of Plaintiff's medical information. Defendants' argument fails at the premise because no specific request was made for Plaintiff's information (and Defendants cannot reasonably argue such is the case for the 19,787 patients whose information was ultimately part of the Blackbaud data breach). Further, even if a specific request made (there was not), Defendants do not present any evidence that it fulfilled its duty of discretion imposed under § 56.16 and thus cannot utilize its protections (nor are such issues ripe for determination at the pleading stage). Moreover, the medical information involved falls outside the scope of permissible disclosures under § 56.16.

Defendants' second contention that Rady Hospital's Notice negates a reasonable expectation of privacy lacks merit for two reasons. First, Plaintiff alleges that patients were never provided with the Notice. FAC ¶ 46, n.1. Second, because the Notice does not comport with § 56.11's requirements making it a valid authorization, it cannot be determined as a matter of law that Plaintiff cannot establish a reasonable expectation of privacy in his medical information. *See Colleen M., supra* 132 Cal.App.4th at 1472-72 (even though plaintiff signed a consent form authorizing unrestricted release of her medical information, because the authorization was not valid under § 56.11, trial court could *not* determine as matter of law that plaintiff could not establish reasonable expectation of privacy).

In light of the foregoing, Defendants cannot establish as a matter of law that Defendants' disclosure of Plaintiff's and Class Members' confidential medical information to Rady Foundation and/or Blackbaud was not a serious invasion of privacy. *See In re Facebook, Inc., Consumer Privacy User Profile Litigation,* 402 F. Supp. 3d 767 (2019) ("Thus, at this stage of the case, the plaintiffs have adequately alleged that Facebook's conduct was offensive and an egregious breach of social norms: it disclosed to tens of thousands of app developers and business partners sensitive information about them without their consent[.]").

### D.   Plaintiff Properly Plead Further Intrusions

Although not a required element, Defendants contend Plaintiff cannot state a claim for intrusion because Plaintiff was not harmed. Yet, Plaintiff alleges that as a result of Defendants' wrongful disclosure of Plaintiff's and Class Members' medical information, they "have been placed at an imminent, immediate, substantial and continuing increased risk of harm from fraud and identity theft."   FAC ¶ 74. "Plaintiff and Class Members must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come." *Id.* "This risk is made even more concerning by the fact that members of the Classes, including the Plaintiff, are minors and thus stand to lose more than what is at usually at stake with identity theft given their lack of credit history and the fact that their information can be used to create a 'clean slate identity.'" *Id.* at ¶ 75.

As to a claim for public disclosure of private facts, Plaintiff alleges Rady Hospital "either disclosed its patients' PHI directly to Blackbaud without prior authorization and in violation of the CMIA and/or Rady's Hospital disclosed its patients' PHI to Rady's Foundation who then disclosed the information to

18

Blackbaud." FAC ¶ 34. Defendants argue that no public disclosure was alleged. However, under either scenario alleged in the FAC, Plaintiff's and Class Members' sensitive and confidential medical information was disclosed and actually viewed without authorization to Rady's Foundation and Blackbaud.

### F.   Injunctive Relief Is Warranted

To state a plausible claim for injunctive *relief*, Plaintiff must allege that he be "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) (citation omitted). Here, Plaintiff alleges that Rady Hospital has a policy of disclosing Plaintiff's and Class Members' medical information in violation of their rights under the CMIA. Defendants only attempt to excuse their conduct and make no indication that Rady Hospital will change its policy to obtain proper disclosures to prevent future illegal disclosures. Even now, Defendants still attempt to divert from their wrongful conduct by pointing to Blackbaud when it was Defendants who violated the CMIA by unlawfully disclosing said information to Blackbaud to begin with, which unfortunately was stored unencrypted and then hacked. Plaintiff's and Class Members' medical information is realistically threatened by Defendants continued wrongful disclosures.  Injunctive relief is thus warranted.  *See Solara*, 2020 WL 2214152, at *15 (denying motion to dismiss injunctive relief); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014) (denying motion to dismiss, reasoning that "Plaintiffs may pursue their injunctive relief claims under [Cal. Civ. Code] Section 1798.84(e), which affords relief when a 'business violates, proposes to violate, or has violated' the [CRA.'"]).

### G.   Plaintiff Plausibly Alleges Breach Of Contract

"Under California law, to state a claim for breach of contract, a plaintiff must plead 'the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom." *Solara*, 2020 WL 2214152, at *5 (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012));

19

*Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015). Contrary to Defendants' contentions, Plaintiff sufficiently alleges a contractual relationship with Rady Hospital. Specifically, Plaintiff alleges "Rady's Hospital entered into a binding and enforceable contract with Plaintiff and the other members of the Classes supported by consideration, including payment for services by Plaintiff and Class Members." FAC ¶ 157. "These contracts incorporated Rady's Hospital privacy policies wherein it promised to protect the privacy of Plaintiff's and Class Member's personal information in accordance with federal and state privacy laws." FAC ¶ 158. Rady Hospital expressly agreed "[It] has a duty and responsibility to safeguard patient medical information." FAC ¶ 160. Rady Hospital breached its obligations under the contract when it disclosed Plaintiff and Class Members' medical information to Rady Foundation and/or Blackbaud in violation of state law, thereby causing damages to Plaintiff. *See* FAC ¶¶ 157-164. Plaintiff therefore pleads the essential terms of the contract. *See Solara*, 2020 WL 2214152, at *5 (accepting as true all reasonable facts alleged in denying motion to dismiss breach of contract claims based on privacy policies); *see also Stasi*, 2020 WL 6799437, at *13.

Defendants erroneously argue that Plaintiff has failed to allege damages; however, damages under a breach of contract claim are "'the detriment caused by the breach.'" *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d at 802 quoting *Stephens v. City of Vista*, 994 F.2d 650, 657 (9th Cir. 1993). Where the detriment is invasion of privacy, a plaintiff need not have suffered a harm measurable by compensatory damages because "under California law even those plaintiffs may recover nominal damages." *Id.* citing Judicial Council of California Civil Jury Instruction 360; *see Solara*, 2020 WL 2214152 ("The dissemination of one's personal information can satisfy the damages element of a breach of contract claim."). The diminished value of an individual's personal information also satisfies damages for a breach of contract claim. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2017 WL 3029783, at *15 (N.D. Cal. May 27, 2016) (finding plaintiffs'

20

personal information is a "valuable commodity" and theft of this information reduces its value is sufficient to plead damages for a breach of contract claim); *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) (same); *In re Yahoo!*, 2017 WL 3727318, at *13-14, 49 (finding "loss of value of PII" is "sufficient to plausibly allege injury" for Article III standing); *Hemeed-Bolden v. Forever 21 Retail, Inc.*, No. CV 18-03019 SJO (JPRx), 2018 WL 6802818, at *3 (C.D. Cal. Oct. 1, 2018) ("breach of contract claims [may be] based on a wide variety of alleged injuries including 'Benefit of the Bargain' losses, loss of value of PII, and consequential out of pocket expenses.") Importantly, Plaintiff has asserted these exact allegations (FAC ¶ 164), and they should not be discounted as Plaintiff and the Class Members are minors whose value of their information is high (Blackbaud even paid a ransom for it).  Further, the cases cited by Rady Hospital overlook the future harm aspect of the breach of contract.

Courts in this circuit have held that such harms *are* sufficient for a breach of contract claim. "In the absence of any applicable contravening state law, these allegations are sufficient to show the element of damages" for a breach of contract claim. *In re Facebook Privacy Litigation*, 572 Fed.Appx. 494 (2014) (holding that allegations of harm from dissemination of personal information and loss of value of said information satisfies damages for breach of contract).

### H. Plaintiff Plausible Alleges Breach Of Implied Contract

A breach of an implied contract claim requires the same elements as a breach of contract claim. *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1050-51 (9th Cir. 2015). "The only difference between an express and implied-in-fact contract is the way in which they are formed… in an implied-in-fact contract, the parties' agreement is inferred from their conduct." *DCIPA, LLC v. Lucile Slater Packard Children's Hosp.*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011). As discussed above, Plaintiff has sufficiently alleged the elements of breach of implied contract, and that an agreement is inferred from the parties' conduct.  Rady

Hospital argues there was no meeting of the minds because of Rady's Privacy Practices mentions fundraising (which is not clearly identified as required by law) and that there were no promises Rady Hospital's or Blackbaud's systems would be immune from cyberattacks, but this argument misses the point. Plaintiff alleges that the implied contract was that the sensitive and valuable personal and health information they provided to Rady Hospital would be reasonably protected and that Rady Hospital implicitly "agreed to comply with its statutory and common law duties and industry standards to protect their medical information." FAC ¶ 149. This is sufficient.  *See Solara,* 2020 WL 2214152, at *5 (denying motion to dismiss breach of implied contract claim); *In re Yahoo!*, 2017 WL 3727318, at *47; *Walters v. Kimpton Hotel & Rest. Grp., LLC*, 2017 WL 1398660, at *2 (N.D. Cal. Apr. 13, 2017); *Castillo v. Seagate Tech., LLC,* 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016). *Lovell v. P.F. Chang's China Bistro, Inc*., the only case cited by Rady Hospital, is unpersuasive as it analyzed Washington contract law and standards.  No. C-14-1152 RSL, 2015 WL 4940371, at *3 (W.D. Wash. Mar. 27, 2015).  Last, to the extent there is any question as to the existence of an implied contract, it is an issue of fact not to be decided on a motion to dismiss. *Acri v. Varian Assocs., Inc*., 121 F.3d 714 (9th Cir. 1997).

## I.    Plaintiff Plausibly Alleges Breach Of Implied Covenant Of Good Faith And Fair Dealing

For a breach of the implied covenant of good faith and fair dealing, "the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990). "[B]reach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing." *Daly v. United Healthcare Ins.*, No. 10-CV-03032, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010). Plaintiff alleges that Rady Hospital breached the implied covenant of good faith and fair dealing by

failing to abide by the law (CMIA) when it disclosed the PHI to Rady Foundation and/or Blackbaud.  FAC at ¶¶ 167-168. Accordingly, its reasonable to infer, that Rady Hospital's disclosure of medical information without authorization was by a conscious and deliberate act that unfairly violated the reasonable expectations of Plaintiff and Class Members. Indeed, courts have found similar allegations to be sufficient. *See Solara,* 2020 WL 2214152, at *6 (denying motion to dismiss breach of implied contract claim noting the "[d]efendant's arguments were better suited for a motion for summary judgment); *In re Yahoo!,* 2017 WL 3727318, at *48. Finally, while Rady Hospital argues that "California law precludes the tort claim," again Rady Hospital mischaracterizes Plaintiff's claim as one brought in tort – Plaintiff brings this claim in contract.

> ### J.      Plaintiff Has Standing to Bring His UCL Claims and Has Sufficiently Plead Them

The UCL proscribed "unfair competition," defined as "any unlawful, unfair, or fraudulent business act or practice…" Cal. Bus. & Prof. Code § 17200. Each of the three prongs provide a "separate and distinct theory of liability" and an independent basis for relief. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). Contrary to Defendants' suggestion, "there are innumerable ways in which economic injury from unfair competition may be shown[,]" and Plaintiff meets this low hurdle standing requirement.  *In re Adobe Sys., Inc. Privacy Litig.,* 66 F. Supp. 3d 1197, 1123-24 (N.D. Cal. 2014). Plaintiff acquired less in his transactions with Defendants than they would have if Defendants protected his information in compliance with CMIA and Plaintiff lost his legally protected interest in his PHI as a result of the disclosures and subsequent breach. *See* ¶¶ 64-67, 172-179. This is sufficient under the above authorities and others.  *Solara*, 2020 WL 2214152. In *In re Anthem, Inc. Data Breach Litig*., 162 F. Supp. 3d 953 (N.D. Cal. 2016), the court recognized that "case law within the data breach context confirms that benefit of the bargain damages represents economic injury for purposes of the

23

UCL." *Id.* at 985 (collecting cases). "Courts in California have consistently held that benefit of the bargain damages represents economic injury for purposes of the UCL." *Id.* citing *In re Adobe Sys., Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1224 (N.D. Cal. 2014) (finding standing under the UCL because "[f]our of the six [p]laintiffs allege they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing."); *In re LinkedIn User Privacy Litig.*, 2014 WL 1323713, *4 (N.D. Cal. Mar. 28, 2014) (finding that benefit of the bargain losses are "sufficient to confer ... statutory standing under the UCL.").

As to the UCL's *unlawful* conduct prong, it "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383 (1992).  Plaintiff has alleged Defendants' violations of CMIA and CRA, satisfying this requirement. *See Solara,* 2020 WL 2214152, at *11 (denying motion to dismiss UCL unlawful claim based on similar allegations).

Next, Plaintiff sufficiently alleges Defendants' wrongful disclosures are *unfair* because Plaintiff and Class Members reasonably expected Defendants to keep their medical information confidential when they decided to obtain health services from Rady Hospital.  FAC ¶ 176. Plaintiff "may proceed with a UCL claim under the balancing test by either alleging immoral, unethical, oppressive, unscrupulous or substantially injurious conduct by Defendants or by demonstrating that Defendants' conduct violated an established public policy. *In re Anthem,* 162 F. Supp. 3d at 990. Sharing minors' PHI is certainly violative of public policy, especially given California's enhanced laws and policies or protecting consumer data.

Last, "[t]o state a claim under the 'fraud' prong of [the UCL], a plaintiff must allege facts showing that members of the public are likely to be deceived by the alleged fraudulent business practice." *Antman v. Uber Technologies, Inc.,* 2015 WL

*Doe v. Rady Children's Hospital et al.*, Case No. 3:21-cv-00114-WQH-AHG
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT

6123054, *6 (N.D. Cal. Oct. 19, 2015).  To satisfy Rule 9(b), Plaintiff's must allege "the who, what, when, where and how" with particularity. *See Kearns v. Ford Motor Co.*, 567 F3d 1120, 1124-45 (9th Cir. 2009).  Here, Plaintiff has plead with claims against Defendants with specificity- under both a misrepresentation and omission theory.  Telling is that Plaintiff was not even aware that his PHI was being shared with Rady Foundation and Blackbaud until Defendants mailed him a letter explaining that his unencrypted PHI was with two entities, he had not given written authorization for.   Defendants had exclusive knowledge of their disclosure of unencrypted PHI, which fall short of industry standard (and compliance with California law) requiring a patient's prior written authorization to use or disclose PHI, including, but not limited to treating or referring physician, the department or practice area, illness or treatment. Defendants also had a duty to disclosure and obtain prior written authorization to share patient's PHI and that its failure to do so for profit (fundraising) must be actionable.

### K.   Leave to Amend Should be Freely Given

When a party requests to amend a pleading, the court must freely give leave when justice so requires. Fed. R. Civ. P. 15(a). Here, leave to amend will not cause undue delay or prejudice as this case is in its infancy, and there is no in bad faith.  If the Court grants any part of Defendants' Motion, it should also grant leave to amend.

### III.   CONCLUSION

Plaintiff requests the Court deny the Motion in its entirety.  Alternatively, Plaintiff requests leave to amend pursuant to Rule 15(a)(2).


DATED: May 24, 2021                /s/ *Ronald A. Marron*
                                   Ronald A. Marron

                                   **LAW OFFICES OF RONALD A.
                                   MARRON**
                                   RONALD A. MARRON
                                   *ron@consumersadvocates.com*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALEXIS WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Classes***

26